In the Matter of the Arbitration Between
**CHEVRON TRANSPORT CORPO-
RATION, Petitioner,**
and
**ASTRO VENCEDOR COMPANIA NA-
VIERA, S. A., Respondent.**

**No. 69 Civ. 572.**

United States District Court
S. D. New York.

May 13, 1969.

Baker, Nelson, Williams & Mitchell, New York City, by C. Dickerman Williams, New York City, for petitioner.

Burlingham, Underwood, Wright, White & Lord, New York City, by John S. Rogers, New York City, for respondent.

## MEMORANDUM

TYLER, District Judge.

Petitioner moves to vacate an award made in arbitration, on the grounds that "the award was procured by undue means; there was evident partiality on the part of the arbitrators; the arbitrators were guilty of misconduct in refusing to postpone the arbitration hearing upon sufficient cause shown; the arbitrators were guilty of misbehavior by which the rights of the petitioner were prejudiced; the arbitrators exceeded

their powers and there was an evident material miscalculation of figures in the award." Respondent cross moves to confirm the award.

The arbitration arose from five voyages under a charter party of the tankship DAMIANOS executed on August 8, 1967, between petitioner Chevron Transport Corporation, the charterer ("Chevron"), and respondent Astro Vencedor Compania Naviera, S.A. ("Astro Vencedor"), the owner. The arbitration was conducted under the rules of the Society of Maritime Arbitrators.

Chevron's specific complaints are that: (1) inadequate and improper notice of the first preliminary meeting of arbitrators was given; (2) Chevron attorneys were forced to sign an improper submission agreement; (3) the arbitrators refused to order timely production of the port logs, documents essential to Chevron's prosecution of the arbitration proceeding; (4) the arbitrators refused to adjourn the hearing and the time for submission of briefs, thereby denying Chevron the opportunity to study the port logs; (5) one arbitrator was intemperate in a telephone conversation with Chevron's attorney; (6) the arbitrators did not properly restrict the abusive behavior of Astro· Vencedor's representative during the arbitration proceeding; (7) the conduct of the arbitration proceeding was inherently unfair because of "numerous prejudicial and partial rulings" by the arbitrators; (8) the arbitrators were unable and/or refused to devote sufficient time to the case, giving hasty and inadequate consideration to the complex issues involved; (9) the arbitrators failed to

make a timely disclosure of "circumstances tending to raise a presumption of bias"; (10) the conduct of one of the arbitrators, Admiral Feraldis, did not "avoid * * * the appearance of bias"; and (11) the conduct of the arbitrators violated Section 11 of the Maritime Arbitration Rules and the recent decision of the Supreme Court in Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968).

■■ At first blush, Chevron's numerous and, in most cases, insubstantially buttressed charges make this case appear to be "a situation where the losing party to an arbitration is· now clutching at straws in an attempt to avoid the results of the arbitration to which it became a party." Ilios Shipping & Trading Corp. v. American Anthracite & Bituminous Coal Corp., 148 F.Supp. 698, 700 (S.D.N.Y. 1957), aff'd, 245 F.2d 873 (2d Cir. 1957). As the briefs submitted to the court indicate, both parties are well aware that an arbitration award is not lightly set aside by the courts. Karppinen v. Karl Kiefer Machine Co., 187 F.2d 32 (2d Cir. 1951). Indeed, an arbitration award is reviewable only on the narrowest of issues and, under the statute, may only be set aside on one or more of four specified grounds.[1] Thus, upon a review of the transcript of the arbitration proceedings, and upon consideration of the allegations made by petitioner in its various affidavits, I find most of Chevron's[2] claims unsubstantiated by that record. Additionally, I conclude that even if they were true, those claims identified in footnote 2, other than claims (9),

---

1. Section 10 of Title 9 of the United States Code (1964) provides that an award may be vacated:

 "(a) Where the award was procured by corruption, fraud, or undue means.

 (b) Where there was evident partiality or corruption in the arbitrators, or either of them.

 (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent

and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

 (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

2. The claims to which I specifically refer, are those which I have numbered earlier in this memorandum as numbers (1), (2), (5), (6), (7), (8), (9), (10), (11).

(10), (11), would not constitute sufficient grounds to set aside the instant award.[3]

The considerations arising from Chevron's claims 3 and 4 are, however, of a potentially more serious nature. Chevron alleges that its attorneys were denied access to the vessel's port logs during the arbitration proceeding, that the logs only became available after the hearings were terminated, that they only had some four days between the time the logs finally became available and the time for filing of briefs to have it translated (from the Greek), and that they were denied an extension of time for filing of briefs which they sought on this basis. Chevron's chief counsel at the arbitration contends that the effect of all this was to hamper seriously his efforts to cross examine witnesses, and to reduce the effectiveness of his final written brief.

The record indicates that the port logs were indeed unavailable to petitioner during the oral hearings, and that counsel was faced with the necessity of having the port logs translated between the close of the hearing and the submission of briefs. There were available during the hearings, however, extracts, evidently prepared by respondent, of pertinent portions of the logs.

■■ It can be said with a fair degree of certainty that perhaps the most important items of documentary evidence in any maritime controversy are the ship's logs.[4] In a maritime arbitration proceeding, then, it would seem more than proper, indeed imperative, that all parties have access to any logs from the very outset of the arbitration proceeding. To supply such documents after oral hearings have terminated could well prejudice the ability of the disadvantaged party, not only in cross examination of witnesses, but in the preparation of its own case. The provision of excerpted portions of the document supplied by one party can place the disadvantaged party at the mercy of the adversary's judgment as to relevancy. Thus, where the document is reasonably available to either party, nothing less than full access to the logs by both parties to the proceeding would seem to suffice. See, e.g., Hyman v. Pottberg's Ex'rs, 101 F.2d 262 (2d Cir. 1939).

■ The absence of statutory provision for discovery techniques in arbitration proceedings obviously does not negate the affirmative duty of arbitrators to insure that relevant documentary evidence in the hands of one party is fully and timely made available to the other side before the hearing is closed. In my view, a failure to discharge this simple duty would constitute a violation of subparagraph (c) of Section 10, *supra*, f. n. 1, where a party can show prejudice as a result.

Unfortunately, the affidavit of C. Dickerman Williams, Esq. for Chevron in this case is unclear in this area. It contains allegations of prejudice which are either distressingly conclusory or in-

---

3. Claims (9), (10), and (11), if substantiated would clearly call for the setting aside of the award under the Supreme Court's recent decision in Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 89 S.Ct. 337, 21 L. Ed.2d 301 (1968). However, the factual allegation on which petitioner relies in this instance does not approach the conduct denounced in that case. Here, the transcript reveals that when the Supreme Court decision was revealed to the arbitration panel during the proceeding, Admiral Feraldis simply commented that he "knew" one of the parties, a rather common situation in the field of commercial arbitration, and a far cry from the "business transactions" of the Canons of Judicial Ethics, from the "appearance of bias" of the *Commonwealth Coatings* case, or the "presumption of bias" of the Rules of the American Arbitration Association, and the Maritime Arbitration Rules of the Society of Maritime Arbitrators.

4. For examples of the difficulties which arise when logs are not properly produced see, e.g., Schade v. National Surety Corp. ("The Manabi"), 186 F.Supp. 423 (S.D.N.Y.1960); The Eros, 3 F.R. D. 40 (S.D.N.Y.1942); United States v. American Trading Co. ("The Glymont"), 56 F.2d 252 (S.D.N.Y.1932).

dicative of comparatively minor inconvenience to counsel. There is no precise statement of what excerpts of the port logs were made available at the hearing by respondent's representative. Consequently, it is impossible to determine what portions of the logs were not produced. Finally, therefore, there is nothing in the record which would permit a finding that undisclosed parts of the logs contained information which would have been helpful to Chevron in its submission to the panel.

 Under these circumstances, the motion to vacate the award is denied, without prejudice, however, to Chevron's right to move to reargue on the sole issue of whether or not its rights were prejudiced by the apparent failure of the panel to insure that all portions of the relevant port logs were made available to Chevron prior to the close of evidence. It is so ordered.