# R. E. Bean Construction Co. v. Middlebury Associates and Middlebury Developers, Inc.

[428 A.2d 306]

No. 8-80

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed November 24, 1980

Motion for Reargument Denied January 30, 1981

*John H. Carnahan* and *J. Eric Anderson* of *Fitts, Olson, Carnahan, Anderson & Bump*, Brattleboro, for Plaintiff.

*Karl W. Neuse*, Middlebury, for amicus curiae Pitcher Associates.

*John A. Kelley*, Middlebury, and *Peter S. Gilfillan* and *Philip Abramowitz* of *Gross, Shuman, Brizdle, Laub & Gilfillan, P.C.*, Buffalo, New York, for Defendants.

Barney, C.J. This case involves the same construction project that was the subject of *Pike Industries, Inc.* v. *Middlebury Associates*, 136 Vt. 588, 398 A.2d 280 (1979), *aff'd after remand*, 140 Vt. —, 436 A.2d 725 (1981) (decided this day). R. E. Bean Construction Co. was the general contractor retained by Middlebury Associates and Middlebury Developers, Inc., here treated as a single entity (Middlebury), to build a shopping center on Route 7 in the Town of Middlebury. Basically, their contract provided that, for a fee, Bean would provide for the building of the shopping center at a specified maximum cost to Middlebury. Any savings on that cost were to be shared. Changes in the development were permitted at cost plus ten percent. The contract further provided for the arbitration of disputes arising from it under the American Arbitration Association Construction Industry Rules. Bean in turn entered into numerous subcontracts for completion of the work. In the fall of 1974 a dispute arose between Bean and Middlebury relating to their contractual obligations. Basically, Bean con-

tended that Middlebury had breached its obligation to make progress payments and Middlebury asserted that Bean had failed to make adequate progress reports.

Bean first commenced litigation against Middlebury, and then filed a demand for arbitration with the American Arbitration Association. Middlebury counterclaimed.

At about this time the subcontractors filed litigation asserting contract claims against both Bean and Middlebury. Bean, Middlebury, and all of the subcontractors, except Pike Industries, Inc., agreed to seek resolution of their dispute through arbitration. See *Pike Industries, Inc.* v. *Middlebury Associates, supra.* Those parties entered stipulations submitting their disputes to arbitration, arbitrators were appointed, hearings held, and an award rendered. The award found Middlebury liable to Bean for $333,261.53 and Bean liable to the subcontractors for lesser amounts.

Middlebury challenged the award in superior court, relying on four basic grounds: (i) that two of the three arbitrators failed to disclose relationships with the parties and their attorneys, (ii) that the award was rendered after the arbitrators' jurisdiction over the case had expired, (iii) that the arbitrators failed to dispose of all the issues submitted, and (iv) that Bean submitted evidence after the close of the hearings. After hearings the court entered findings of fact and conclusions of law. As amended, the findings generally rejected Middlebury's contentions with one exception; the court found error in the arbitrators' express refusal to include in the award any amount "for any sum which might be due to Bean from Middlebury on account of work performed by Pike." This language is taken from the arbitration award. The court stated its view that an appropriate release by Bean would cure this defect. Bean executed a release and the court confirmed the award. Middlebury appeals, urging that each of the contentions it advanced in the superior court required that the award be vacated, and arguing some new grounds.

■ The parties in their stipulations for submission to arbitration agreed:

> that any party hereto may apply to the court for an order vacating[,] . . . modifying[,] or correcting the award as prescribed in the United States Arbitration Act of 1925,

9 U.S.C. Sections 1–14. The procedure as to such application and the order of the Court shall be as set forth in the United States Arbitration Act including but not limited to Sections 9, 10, 11, 12, and 13.

The superior court noted expressly in its conclusions of law that it considered itself bound by the Act. To the extent that the Act is part of the contract, the court was correct. However, the Act applies of its own force only to arbitration agreements relating to maritime transactions or involving interstate or foreign commerce. *Cook* v. *Kuljian Corp.*, 201 F. Supp. 531, 535 (E.D. Pa. 1962), *aff'd sub nom. Cook* v. *Damodar Valley Corp.*, 317 F.2d 412 (3d Cir. 1963). Neither circumstance has been alleged or proved in this case. Therefore, the Act applies not as supreme federal law, but by consent of the parties. We are prepared to turn to it as we would to the rest of their contract. The decisions of other jurisdictions under the Act are persuasive statements of its meaning. However, if in conflict with our own state public policy, the Act in this context is without effect.

Vermont has a strong tradition of upholding arbitration awards whenever possible. See *French* v. *Raymond*, 82 Vt. 156, 72 A. 324 (1909) (award upheld despite assertion that it was based on perjured testimony). Awards are liberally construed and every possible intendment is made in their support. *Batchelder* v. *Reynolds*, 107 Vt. 439, 440, 180 A. 884, 885 (1935) (citing *Rixford* v. *Nye*, 20 Vt. 132, 138–39 (1848)). In reviewing awards, the Court is mindful of the importance of arbitration as an alternative to the courts for the speedy and relatively inexpensive resolution of disputes and of arbitration's long history in Vermont law. "These domestic tribunals are in the interest of peace, and the State has an interest that controversy should end. Such courts sometimes get aside of technical law, but ordinarily reach substantial justice." *Morse* v. *Bishop*, 55 Vt. 231, 234–35 (1882). Burgeoning litigation in recent years emphasizes the need to encourage such alternatives. To the extent that justified confidence in arbitration is established, it can only aid the courts in meeting the public's need for speedy, inexpensive and fair dispute resolution. The courts must respect an arbitrator's determinations; otherwise, those determinations will merely add another expensive and time consuming layer to the already

complex litigation process. If the courts merely rubber-stamp arbitrators' decisions, however, litigants will hesitate to entrust their affairs to arbitration. It is this delicate balance which courts reviewing arbitration decisions must strive to attain.

## I.

■ Middlebury points out that the superior court judgment denying Middlebury's motion to vacate the arbitration award and granting Bean's motion to confirm the award was entered on September 21, 1979. The award held that Middlebury had breached its contract with Bean. Later, on October 26, 1979, a superior court found that Bean, not Middlebury, had breached the contract. The parties concede that the subject of the two claims is the same. Middlebury argues that since the judgment orders conflict, the second must control, and that therefore the confirmation of the arbitration award must be reversed. It cites *Cootey* v. *Remington,* 108 Vt. 441, 189 A. 151 (1937), to support its contention. That case indeed indicates that as between two inconsistent judgments, the later in time prevails over the former. *Id.* at 444–45, 189 A. at 153. While correct, this principle does not demand the result contended for by Middlebury in the case at bar. It is but a specific application of the general doctrine of res judicata, and is more fully stated as follows:

> Where in two successive actions between the same parties inconsistent judgments are rendered, the judgment in the second action is controlling *in a third action* between the parties.

Restatement of Judgments § 42 (1942) (emphasis added). This doctrine assumes a set of circumstances which are simply not the case here: that in the second action the defense of res judicata was waived because it was not asserted. Restatement, *supra,* Comment a. By its terms § 42 does not apply to this case because our case is not a third action testing the validity of two prior inconsistent judgments, but rather a direct challenge of one judgment in light of a later conflicting one. In such a case it is not § 42 but § 43 that applies. Section 43 provides:

> A valid and final judgment rendered in one action is

conclusive in another action between the parties although the other action was commenced before the rendition of the judgment or before the commencement of the action in which the judgment was rendered.

It is therefore not the judgment in this action which is controlled by the Pike judgment but vice versa. Although the first judgment was appealed, it was final for res judicata purposes. *Firestone Tire & Rubber Co.* v. *Hart's Estate,* 104 Vt. 197, 201, 158 A. 92, 94 (1932).

Furthermore, we have noted in the companion case to this one that the stipulation submitting the contract issue to arbitration bound Middlebury and Bean to the arbitration result. *Pike Industries, Inc.* v. *Middlebury Associates, supra,* 140 Vt. at —, 436 A.2d at 727. Since the arbitration award was rendered first, Middlebury was bound to that result.

## II.

Middlebury also argues that the trial court erred in failing to vacate the award in light of the failure of two of the arbitrators to disclose certain relationships with the parties. They point out that § 18 of the Construction Industry Arbitration Rules (under which this arbitration was conducted) provides:

> A person appointed as a neutral arbitrator shall disclose any circumstances likely to create a presumption of bias or which might disqualify him as a neutral arbitrator, including any past or present relationship with the parties or their counsel. Upon receipt of such information from any source, the AAA shall immediately communicate it to the parties. If a party challenges an arbitrator, he shall be replaced, unless the AAA determines that the circumstances do not disqualify the arbitrator from serving as a neutral.

If the policy discussed above, of cultivating arbitration as an alternate method of dispute resolution, is to be served, we must "be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review." *Commonwealth Coatings Corp.* v. *Continental Casualty Co.,* 393 U.S. 145, 149 (1968).

An award should be vacated where undisclosed relationships create an impression of possible bias. However, if that rule is not "to emasculate the policy of the law in favor of the finality of arbitration," not every relationship will require that an award be vacated. *San Luis Obispo Bay Properties, Inc.* v. *Pacific Gas & Electric Co.*, 28 Cal. App. 3d 556, 568, 104 Cal. Rptr. 733, 741 (1972). Only relationships from which one could reasonably infer bias, not those which are "peripheral, superficial or insignificant," will require vacating the award. *Cross Properties, Inc.* v. *Gimbel Brothers, Inc.*, 15 App. Div. 2d 913, 914, 225 N.Y.S.2d 1014, 1016 (per curiam), *aff'd mem.*, 12 N.Y.2d 806, 187 N.E.2d 129, 236 N.Y.S.2d 61 (1962).

In this case one of the arbitrators was an attorney. He did not disclose any relationship with any party or any of the participating attorneys. Middlebury relies upon two kinds of relationships to impeach the impartiality of the attorney-arbitrator.

First, he and his law firm regularly represented the United States Fidelity & Guaranty Company in this state. Bean has assigned its claims to that company. Although in many circumstances such a situation might require vacating the award, this is not such an instance. The purpose of § 18 and similar arbitration rules is to assure the actual and apparent impartiality of arbitrators. See *Commonwealth Coatings Corp.* v. *Continental Casualty Co.*, *supra*, 393 U.S. at 150. In this case the superior court found as a fact that the attorney-arbitrator did not know of the Bean-United States Fidelity assignment at any time before rendering the award. He could not have disclosed his relationship with United States Fidelity because he had no way of knowing that it was relevant. The relationship therefore could not have eroded his impartiality. Although the preferable course would have been for Bean to disclose the assignment, under these circumstances the indirect relationship, of which the arbitrator was uninformed, in no way threatens the validity of the award.

As the second ground of bias, Middlebury points to the attorney-arbitrator's professional and personal relationships with several of the attorneys representing parties adverse to Middlebury. Even though Middlebury employed Vermont counsel when this case went to arbitration, Middlebury

was not sufficiently concerned before the award to ask that counsel what they knew about the arbitration attorney's professional and personal relationships. Given the size of the Vermont bar, professional and personal relationships with the attorneys representing the parties in an arbitration proceeding are almost inevitable, particularly where, as here, the attorney-arbitrator is a prominent, longtime practitioner. Certainly the very best position would have been for the attorney-arbitrator to expressly make the parties aware of his contacts with the attorneys. But we do not believe that this failure requires that the award be vacated. The relationship is too insignificant to justify vacation. Cf. *Chevron Transport Corp. v. Astro Vencedor Compania Naviera*, 300 F. Supp. 179, 181 n.3 (S.D.N.Y. 1969) (fact that arbitrator "knew" a party was insufficient to require vacation of award).

The other arbitrator who is the subject of complaint is a contractor. He disclosed that his company and Bean were both members of the Association of General Contractors of New Hampshire. The parties expressly waived any objection based on the disclosed facts. Apparently the basis of Middlebury's claim as to the contractor-arbitrator is that he failed to disclose that he *personally* was a member of the Association, as was an officer of Bean. Where, as here, a party has partial knowledge of a potential disqualifying factor and does not inquire further into that matter, the party cannot remain silent and object after an unfavorable award. *In re Ilios Shipping & Trading Corp.*, 148 F. Supp. 698, 700 (S.D. N.Y.), *aff'd per curiam*, 245 F.2d 873 (2d Cir. 1957). Moreover, membership in the same professional organization is not itself a basis for inferring bias. *San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Electric Co., supra.*

### III.

Middlebury further argues that the award must be vacated because the arbitrators failed to render the award on a timely basis. Unless extended by agreement, § 40 of the AAA Construction Industry Rules requires that the award be rendered within 30 days of closing of the hearings. The hearings were closed on November 30, 1976, and the parties agreed to extend the time for the award to January 26, 1977. No award

was rendered until February 23, 1977. Middlebury contends that the arbitrators' jurisdiction lapsed after January 26.

██ Certainly, the general common law rule is that an award not rendered within a party-established time limitation is void. See, e.g., *Librascope, Inc.* v. *Precision Lodge No. 1600*, 189 Cal. App. 2d 71, 75, 10 Cal. Rptr. 795, 797 (1961); *In re Broadway-40th Street Corp.*, 296 N.Y. 165, 167, 71 N.E.2d 451, 452 (1947); *Johnson* v. *Crawford*, 212 Pa. 502, 505, 61 A. 1103 (1905). The common law rule is based upon contract. Since the contract states the arbitrators must decide by a specified date, their jurisdiction lapses after that date. Under Vermont law, an arbitrator's authority finds its source in contract, *Blood* v. *Bates*, 31 Vt. 147, 150 (1858); therefore, the general common law rule should apply.

In this case, however, neither party saw fit to object to the tardiness of the award until it was clear which was the loser. It is highly technical to require that an award be vacated for a reason which both parties were aware of before it was rendered, but which neither saw fit to complain of until it was clear which side lost. This is particularly true in view of the present vitality in this state of the rule that an agreement to arbitrate is revocable until the award is rendered. *Fairchild* v. *West Rutland School District*, 135 Vt. 282, 286, 376 A.2d 28, 31 (1977). If either party felt that it was in any way being prejudiced by the delay, it had the clear option of withdrawing from the arbitration and pursuing its remedies in another forum.

Given such circumstances, we choose to follow the policy of § 8 of the Uniform Arbitration Act. Section 8 provides that an objection based on tardiness in rendering an award is waived when not asserted before rendition of the award. Since Middlebury did not object until after the award was rendered, it has waived the issue of tardiness.

## IV.

██ Middlebury next contends that the award is invalid because it does not settle all of the issues submitted. They point to § 10 of the United States Arbitration Act, § 42 of the Construction Industry Arbitration Rules, and Vermont common law as requiring a reviewing court to vacate the award for lack of completeness.

Our cases state and restate the proposition that an award must cover all of the issues submitted. *Young* v. *Kinney,* 48 Vt. 22 (1875); *Morse* v. *Hale,* 27 Vt. 660 (1855); *Smith* v. *Potter,* 27 Vt. 304 (1855). Contrary to Middlebury's claim in its brief, however, Vermont law does state that "[a]n award may be good in part and bad in part, if the parts are distinguishable and severable." *Sabin* v. *Angell,* 44 Vt. 523, 526 (1872). Middlebury argues that the claims cannot be severed, since the claim is based on only one contract between Bean and Middlebury. When one examines paragraph 5 of the stipulation submitting the case to arbitration, however, this argument makes no sense. Paragraph 5 provides that the amount of Middlebury's liability to Bean "shall be subject to the final adjudication in the case of Pike Industries, Inc. v. Middlebury Associates, . . . ." By the very nature of the stipulation Middlebury admits that Bean's claim for the Pike work is severable. Since the Pike claim is severable, the remainder of the award is thus valid.

Chief Justice Redfield discussed the reason for the completeness rule in *Smith* v. *Potter, supra,* observing that it was unlikely that the losing party would have submitted the case to arbitration if it had known that the arbitrators were not going to settle all of the issues. *Id.* at 309. That justification does not apply in this case. As previously noted, the stipulation provided that the arbitration award would be subject to the final judgment in *Pike Industries, Inc.* v. *Middlebury Associates.* That provision shows that Middlebury was willing to settle Bean's claims for part of the Pike work in a separate proceeding. This willingness is further confirmed by the correspondence which counsel for Middlebury and for Bean sent to the arbitrators and incorporated into the record. That correspondence indicates that Middlebury was willing to settle some of the claims for the Pike work in the arbitration proceeding, although it originally did not intend to. Since Middlebury apparently did not even expect to settle all of Bean's claims for the Pike work in the arbitration proceedings when the hearings started, it may not complain here about the arbitrators' failure to settle those claims.

## V.

As noted earlier, the superior court found error in the arbi-

trators' express refusal to settle Bean's claims for the Pike work. The court feared Bean might have a second opportunity to sue Middlebury for the Pike work as a third party in the concurrent Pike-Middlebury action in superior court. To protect Middlebury from the second opportunity, the court required Bean to release Middlebury from the claims for the Pike work before it would validate the award. Bean complied.

Middlebury claims that the superior court did not have authority to require Bean to release Middlebury from the claims. The allegation has as its premise that the arbitrators could not exclude the claim for the Pike work from the arbitration award. We have held, however, that the arbitrators could exclude the claim. The release is therefore surplusage. Since the release releases Middlebury from Bean's claims for the Pike work, the release actually benefits rather than harms Middlebury. The release is no basis for an attack on the award.

Middlebury also claims that Bean's release does not comply with the superior court's order, and therefore the court should have vacated the award. Appellant's argument is frivolous.

The court's amended order suggested that Bean "release Middlebury from all claims by Pike." Middlebury argues that the Bean release does not release Middlebury from Pike's claims.

As noted earlier, the superior court was concerned that Bean might proceed against Middlebury for a second time for the Pike work in the concurrent proceeding between Pike and Middlebury. The court therefore required Bean to release its claims for the Pike work against Middlebury. As Bean points out in its brief, "The context of the findings and order as a whole make it clear that Bean was being asked to release its *own* claim against Middlebury for the paving work done by Pike, . . . ." Brief for appellee at 16 (emphasis added). Bean could not release Middlebury from Pike's claims. That was not the purpose of the release. Bean released its *own* claims against Middlebury for the Pike work. That release satisfied the order. Middlebury's claim is without merit.

## VI.

Middlebury contends that Bean's release is ineffective because it was not executed by the United States Fidelity and Guarantee Company. It points to part of the agreement be-

tween Bean and United States Fidelity as requiring United States Fidelity's signature to release the claims. We must examine the whole agreement, however.

Through the agreement Bean assigned all of its claims to United States Fidelity. Paragraph 11(A) of the agreement provides: "R. E. Bean Construction Co., Inc. shall handle and control the prosecution of all said claims including the settlement thereof." Bean did exactly that in this case. Through the agreement Bean became United States Fidelity's agent. *Fay & Bryant* v. *Richmond*, 43 Vt. 25, 28 (1870). As a result of the agency, United States Fidelity became bound to third parties by Bean's acts within the scope of the agency. Since Bean was acting according to the agreement, it was acting within the scope of the agency, and United States Fidelity is therefore bound by the release and Middlebury may enforce the release against United States Fidelity. Therefore, the release is effective.

## VII.

Middlebury asks that the judgment be amended nunc pro tunc to require any amount due from Middlebury to Bean to be paid into court, with a court order providing for payment directly to lienholders as to amounts found by the arbitration award to be due the lienholders and to claimants with trustee process as determined by the court. Bean agrees to this request. It is so ordered. After paying the claimants the superior court shall pay the remainder over to Bean.

## VIII.

Middlebury also asks that the judgment order be amended to comply with paragraph 5 of the stipulation. That paragraph made the arbitration award "subject to" the final adjudication of *Pike Industries, Inc.* v. *Middlebury Associates*. The provision was placed in the stipulation so that if Middlebury had to pay Bean for the Pike work in the arbitration, and later had to pay Pike directly in the Pike-Middlebury case, Middlebury could credit the payment in the Pike case to the Bean award. As Middlebury has pointed out, however, the arbitrators refused to include any amount for the Pike work in the arbitration award. The requested amendment would

therefore be superfluous. We refuse to amend the order for this requested purpose.

## IX.

Middlebury contends that the arbitrators should have included interest in the arbitration award, and that therefore the superior court's modification of the award to include interest was improper. Middlebury asks that the addition of $140,632.57 in interest be deleted.

Under Article 7.9.1 of the main contract between Bean and Middlebury, "Any moneys not paid when due to either party to this contract shall bear interest at the legal rate in force at the place of the Project." This was part of Bean's claim in the arbitration. In their stipulation Bean and Middlebury submitted "all of the claims of the parties" to arbitration. The arbitrators presumably have included such interest as they deemed appropriate in the award, and the court should not have included interest for the arbitration period in its judgment.

Once the arbitrators rendered their decision, however, interest started to accrue. "Where the award sued on directs the payment of a definite sum of money the recovery is ordinarily the amount of the award, together with interest where it is properly allowable . . . ." 6 C.J.S. *Arbitration* § 143. The interest should run from the date of the award. *Ukrainian National Urban Renewal Corp.* v. *Joseph L. Muscarelle, Inc.*, 151 N.J. Super. 386, 402, 376 A.2d 1299, 1307 (1977). Interest in this case should cover from February 23, 1977, the date of the arbitration decision, and the superior court's order should be corrected accordingly.

## X.

Finally, Middlebury claims error in Bean's submitting evidence after the close of the evidentiary portion of the hearing. During the hearing a principal of Middlebury testified that Middlebury's construction lender had retained an engineering company to report to it on project progress. When asked, that individual denied recalling that he had received a report from the engineering company that the progress was 98% complete. He was asked to search his records to locate the engineer's report. Middlebury agreed to request the engineering reports from its lender and submit them when available.

After the close of the hearings, Bean submitted an affidavit by one of its officers swearing that he dealt with the consulting engineer assigned by the company and that the engineer told him, before Bean terminated its work on the project, that in his opinion the work was 95.5% complete. The affidavit further stated that the engineer told the officer that Middlebury's principal had copies of his report. Bean proposed to submit this affidavit if Middlebury refused to submit the engineer's report to the arbitrators.

Middlebury never furnished the report. Instead, it sent a letter from its lender stating that the lender never released such reports. When Bean submitted the affidavits and four architect's drawings to the arbitrators, Middlebury objected and requested a reopening of the hearings for rebuttal and cross-examination. The arbitrators did not reply to the request.

The superior court rejected Middlebury's contention that the submissions constituted error. As to the affidavit, the court took the position that there was no indication, except suspicion, that the arbitrators considered it. As to the drawings, the court found no reason to believe the arbitrators had relied upon them, and concluded that the drawings were "minimally probative."

Since the arbitrators did not expressly reject the affidavit or drawings, and arbitrators may not testify as to their deliberation process, *Sobel* v. *Hertz, Warner & Co.*, 469 F.2d 1211, 1214 (2d Cir. 1972), we think that the only fair assumption must be that the affidavit and drawings were considered.

Middlebury contends that as to evidentiary matters it is entitled to vacation of the award if the arbitrators denied it "a fundamental fair hearing," pointing to *Bell Aerospace Co.* v. *Local 516*, 500 F.2d 921 (2d Cir. 1974). It argues that accepting the evidence without providing an opportunity to cross-examine and rebut denied it fundamental fairness.

It appears that the arbitrators violated several provisions of the American Arbitration Association Construction Industry Rules by accepting the evidence. Under § 28 arbitrators are required to extend to parties a "full or equal opportunity" to present proof. Under § 30 evidence is ordinarily to be taken in the presence of all the parties. Under § 31 evidence may be submitted after the close of the evidentiary portion of

a hearing only if previously arranged or consented to. The question as we view it is not simply whether these rules have been violated, but whether those violations are of such a grave nature as to require that the award be vacated notwithstanding our policy in favor of upholding such awards. In this context the *Bell Aerospace Co., supra,* standard of fundamental fairness is an appropriate one and we adopt it.

We will not hold that submission of evidence after the hearing violates fundamental fairness per se, however. Middlebury must show more than submission of the affidavits and drawings. It must show that the submission prejudiced its case. See *Chevron Transport Corp.* v. *Astro Vencedor Compania Naviera, supra,* 300 F. Supp. at 182. Other than make the bare assertion that the submissions denied it "fundamental fairness," Middlebury has shown nothing to evidence the extent of its harm. If given an opportunity to cross-examine and rebut, Middlebury may not have been able to help its case. Further, Middlebury may not *have* rebuttal evidence; this may be simply "a situation where the losing party to an arbitration is now clutching at straws in an attempt to avoid the results of the arbitration to which it became a party." *Id.* at 180 (quoting *In re Ilios Shipping & Trading Corp., supra*). These questions go to the degree of Middlebury's harm. We cannot determine the extent of prejudice without knowing what evidence Middlebury would have brought forward if given an opportunity. At no time in these proceedings has Middlebury made any offer of proof of any such evidence.

We hold that when challenging an arbitration award on the basis of submission of evidence after the hearing, the complaining party must demonstrate (i) that the evidence actually affected the award and (ii) that the complaining party had evidence which reasonably tended to rebut or modify the post-hearing evidence. These demonstrations will show whether or not the submissions harmed the complaining party. If the complaining party can make both demonstrations, the court should vacate the award.

Since this is the first time we have made this a part of our arbitration law, we remand the case to give Middlebury an opportunity to proffer evidence to show that the submissions substantially prejudiced its case. In the future, com-

plaining parties must do so when they challenge the award in superior court, or they will have waived the issue for appeal.

The cause will be remanded for a hearing in the trial court to give Middlebury an opportunity, if it be so advised, to establish that the evidence submitted after the hearing actually affected the arbitration award, and that at the time of Middlebury's objection, Middlebury had evidence that reasonably tended to rebut or modify the submitted evidence, all as previously discussed. If the trial court, in accordance with the facts as it finds, determines that Middlebury prevails on this issue, it should order the arbitration award vacated and award costs accordingly. If the trial court determines to the contrary, it should amend the award as already discussed, and then affirm the award and award costs accordingly.

*Cause remanded for hearing in accordance with the views expressed in the opinion. Thereafter, in accordance with the trial court's finding and decision based on the aforesaid hearing the arbitration award shall be either (i) vacated or (ii) affirmed with amendments as follows:*

1. *The second sentence of the third paragraph of the Order shall be amended by striking the words "$140,632.57 (as of 11 September 1979, said interest accruing at the rate of $109.57 per day) and costs of $21.00 for a total of $473,915.10," and substituting in its place the figure representing interest accruing from 23 February 1977, to be calculated by the trial court, and a separate figure representing costs.*

2. *The court shall add a fourth paragraph providing for Middlebury to pay the amount it owes to Bean directly into the court, and for payment by the court directly to the lienholders of record as to amounts found by the arbitration award to be due the lienholders, and to claimants of record with trustee process as determined by the court, and to Bean as to amounts remaining.*

*The parties shall bear their own costs in this Court. Costs below to abide the event.*