2004 SD 44

**SPISKA ENGINEERING, INC.,**
**Plaintiff and Appellant,**

v.

**SPM THERMO–SHIELD, INC.,**
**Defendant and Appellee.**

No. 22554.

Supreme Court of South Dakota.

Argued On Feb. 17, 2004.

Decided April 7, 2004.

Michael L. Loos of Johnson, Eiesland, Huffman & Clayborne, Rapid City, South

Dakota, Jeffrey A. Maidenberg, Englewood, Colorado, for plaintiff and appellant.

Gerald M. Baldwin, Custer, South Dakota for defendant and appellee.

MEIERHENRY, Justice.

[¶ 1.] This is an appeal arising from a judgment of the circuit court affirming the decision of an arbitrator and denying a motion to vacate an arbitration award.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] Spiska Engineering, Inc. (Spiska) and SPM Thermo–Shield, Inc. (Thermo–Shield) initially entered into a contract August 3, 1994. Subsequently, the parties added addendums and supplements to the original contract. The original contract granted Spiska exclusive rights in several European countries to distribute Thermo–Shield products. The subsequent addendums and supplements granted Spiska additional territories. Spiska was also given the right to mix raw Thermo–Shield material rather than buying the premixed product. Beginning in September 2000, Thermo–Shield attempted to amend the parties' prior agreements to include a price increase of 30% and relinquishment of Spiska's mixing rights. Spiska rejected the amendments. Soon thereafter, Thermo–Shield notified Spiska that its contracts and rights with Thermo–Shield were terminated. Spiska requested arbitration per the original contract, claiming wrongful termination of the contract. The arbitrator decided in favor of Thermo–Shield.

[¶ 3.] Spiska filed a Motion to Vacate the Arbitration Award in circuit court. The trial court reviewed the arbitration record and took testimony. Additionally, Spiska entered into evidence a contract that had not been produced at arbitration. The circuit court denied Spiska's motion. Spiska filed a Motion to Reconsider which was also denied. Spiska then appealed to this Court. Subsequent to filing the appeal, Spiska moved for a new trial in circuit court based on newly discovered evidence. The trial court denied the motion because it lacked jurisdiction. Spiska filed a Motion to Supplement the Record with this Court. We remanded the matter to the trial court to determine if the record should be supplemented with the new documents. The trial court determined that the records were relevant and was satisfied that there was good reason they were not produced at trial. Accordingly, newly discovered documents were added to the record consisting of a business letter and two memorandums of understanding between Thermo–Shield and Spiska's competitor. On remand, our Order did not provide the trial court with an opportunity to reconsider its opinion in relation to the new documents.

## ISSUE

Whether the trial court erred by affirming the arbitration award.

## STANDARD OF REVIEW

[¶ 4.] Judicial review of arbitration awards is narrow as provided by SDCL 21–25A–24. In reviewing a trial court's order "confirming the arbitrator's award, we accept the court's factual findings unless clearly erroneous, but decide questions of law de novo." *Schoch v. InfoUSA, Inc.*, 341 F.3d 785, 788 (8th Cir. 2003) (citation omitted). The party asserting error has the burden of proof.

## DECISION

[¶ 5.] Spiska claims that the arbitration award in favor of Thermo–Shield should be vacated because the award was procured by undue means, subsection (1) of SDCL 21–25A–24. The statute provides in part: "Upon application of a party, the court

shall vacate an award where: (1) The award was procured by corruption, fraud or other undue means." *Id.* Spiska alleges that the newly discovered evidence supports its claim that Thermo–Shield's grounds to terminate the parties' agreements were a pretext to disguise its true desire to enter into a more lucrative deal with a different distributor. Spiska claims during arbitration it was limited in substantiating its claim because Thermo–Shield withheld documentation of its negotiations with the other distributor. The documents surfaced in lawsuits against the other distributor after the arbitration hearing and after the review hearing in circuit court. As a result of this newly discovered evidence, Spiska claims that the arbitration award to Thermo–Shield was procured by undue means. This Court has not previously had occasion to apply this subsection.[1]

[¶ 6.] It is important first to determine what constitutes "undue means" under the statute. SDCL 21–25A–24(1) provides an award to be vacated if: "[t]he award was procured by corruption, fraud or other undue means." *Id.* The term "undue means" is not defined by statute. Generally, courts have defined the term in conjunction with "corruption" and "fraud." This method follows the doctrine of statutory construction noscitur a sociis, which defines a word in the "same general sense" as the words with which it is coupled. SUTHERLAND STATUTORY CONSTRUCTION § 47:16 Sixth Edition.

> [T]he maxim [noscitur a sociis] means "it is known from its associates" and in practical application means that a word may be defined by an accompanying word, and ordinarily the coupling of

words denotes an intention that they should be understood in the same general sense.

*Id. See also Opperman v. Heritage Mut. Ins. Co.,* 1997 SD 85, ¶ 7, 566 N.W.2d 487.

[¶ 7.] It follows then that undue means signifies "something akin to fraud and corruption." *Seither & Cherry Co. v. Illinois Bank Bldg. Corp.,* 95 Ill.App.3d 191, 50 Ill.Dec. 672, 419 N.E.2d 940, 945 (1981). The Eighth Circuit Court of Appeals defined the term as follows:

> The term "undue means" must be read in conjunction with the words "fraud" and "corruption" that precede it in the statute. *See Drayer v. Krasner,* 572 F.2d 348, 352 (2dCir.), *cert. denied,* 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978). Consistent with the plain meaning of fraud and corruption, and with the limited scope of judicial review of arbitration awards, other circuits have uniformly construed the term undue means as requiring proof of intentional misconduct. *See American Postal Workers Union, AFL—CIO v. United States Postal Serv.,* 52 F.3d 359, 362 (D.C.Cir. 1995) (undue means limited to conduct "equivalent in gravity to corruption or fraud, such as a physical threat to an arbitrator"); *A.G. Edwards Sons, Inc. v. McCollough,* 967 F.2d 1401, 1403 (9thCir.1992) (undue means "connotes behavior that is immoral if not illegal"), *cert. denied,* 506 U.S. 1050, 113 S.Ct. 970, 122 L.Ed.2d 126 (1993); *Shearson Hayden Stone, Inc. v. Liang,* 493 F.Supp. 104, 108 (N.D.Ill.1980) (" 'undue means' requires some type of bad faith in the procurement of the award"), *aff'd,* 653 F.2d 310 (7thCir.1981).

---

1. This Court has only considered four cases under SDCL 21 25A 24: *Azcon Const. Co., Inc. v. Golden Hills Resort, Inc.,* 498 N.W.2d 630 (S.D.1993); *Aamot v. Eneboe,* 352 N.W.2d 647 (S.D.1984); *L.R. Foy Const. Co.,* *Inc. v. Spearfish School Dist. No. 40–2,* 341 N.W.2d 383 (S.D.1983); *Peska Const. Co., Inc. v. Portz Inv., LLP,* 2003 SD 136, 672 N.W.2d 483.

*PaineWebber Group, Inc. v. Zinsmeyer Trusts P'ship,* 187 F.3d 988, 991 (8th Cir. 1999), reh'g and reh'g en banc denied, (Oct. 19, 1999) and *cert. denied,* 529 U.S. 1020, 120 S.Ct. 1421, 146 L.Ed.2d 313 (2000). Likewise, a court recently said "the 'undue means' language of the statute [has been interpreted] as requiring some type of bad faith behavior by the winning party." *Grosso v. Barney,* No. 03–MC–115, 2003 WL 22657305, at *8 (E.D.Pa. Oct.24, 2003) (citation omitted). Therefore, the party asserting error has the burden of showing that the winning party procured the award through bad faith behavior "equivalent in gravity to corruption or fraud." *PaineWebber,* 187 F.3d at 991.

[¶ 8.] This Court has defined bad faith behavior in different contexts. For example, we said "[a] municipality acts in bad faith when it condemns land for a private scheme or for an improper reason, though the superficially stated purpose purports to be valid." *City of Rapid City v. Finn,* 2003 SD 97, 11, 668 N.W.2d 324, 327 (quoting *City of Freeman v. Salis,* 2001 SD 84, 12, 630 N.W.2d 699, 703). In the context of business transactions we have said " 'bad faith' is the antithesis of good faith and has been defined ... to be when a thing is done dishonestly and not merely negligently. It is also defined as that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest." *Smith v. Halverson,* 273 N.W.2d 146, 151 (S.D.1978) (internal and further citations omitted). Further, this Court has defined fraud as " 'a representation made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; and made with intent to deceive and for the purpose of inducing the other party to

act upon it.' " *Cleveland v. BDL Enterprises, Inc.,* 2003 SD 54, 56, 663 N.W.2d 212, 219–20.

[¶ 9.] Because we have said that undue means requires proof that the award was procured by bad faith behavior equivalent to fraud or corruption on the part of the winning party, Spiska must prove that Thermo–Shield withheld the documents for an improper purpose. In other words, it must be shown that Thermo–Shield was dishonest or deceptive in its withholding of these documents implying some wrongdoing or selfish motive. The burden is by a preponderance of the evidence. *Sejnoha v. City of Yankton,* 2001 SD 22, ¶ 14, 622 N.W.2d 735, 739.[2] Further, Spiska must show a nexus between bad faith withholding of the documents and the procurement of the award. *PaineWebber,* 187 F.3d at 993; *Forsythe Int'l., S.A. v. Gibbs Oil Co. of Texas,* 915 F.2d 1017, 1022 (5thCir.1990) ("requiring a nexus between the alleged fraud and the basis for the [arbitrator's] decision").

[¶ 10.] The issues brought before the arbitrator were:

(1) Whether either party had materially breached the contract.

(2) Whether Thermo-shield's grounds to terminate its agreements with Spiska were a pretext for its actual purpose of termination.

The evidence Spiska presented at arbitration to show that it had not materially breached the contract included Spiska's: (1) efforts and monetary investment to obtain results for certifications to sell Thermo–Shield products in its exclusive territories in Europe, (2) time, effort and expenses in maintaining an overseas office, free-zone warehouse, translation and printing of sales brochures, (3) attendance at trade shows, (4) building a sales and

2. As noted previously, the statute provides by fraud, corruption, or other undue means. SDCL 21–25A–24(1). Therefore, to prove other undue means would require the same burden as proving fraud or corruption.

distribution network for Thermo–Shield products, and (5) minimum product orders per the parties' contract.

[¶ 11.] Thermo–Shield countered Spiska's evidence through testimony of its president and CEO Joseph Raver (Raver). Raver's testimony deemphasized Spiska's time, skills, and expenses related to obtaining governmental certification for the products to be distributed in Europe. He also downplayed the expansiveness and costs associated with the establishment of Spiska's sales and distribution network. Raver pointed to Spiska's reduced product orders in relation to Spiska's overall performance in promoting Thermo–Shield products. Raver denied engaging in business dealings with Spiska's competitors in violation of their agreements or engaging in dealings detrimental to Spiska's exclusive sales territories. Raver also presented a document signed by Spiska, relinquishing Spiska's exclusive territorial rights in Europe. Spiska denies voluntarily relinquishing any rights.[3]

[¶ 12.] The evidence presented at arbitration for issue two, Thermo–Shield's pretext for terminating the agreements, was limited. Spiska attempted to show Raver had associated with Spiska's competitors and attempted to establish that Raver was motivated to deal with Spiska's competitors because he could attain a more lucrative price.[4] Spiska presented various documents during arbitration which indirectly and circumstantially indicated Thermo–Shield's favorable dealings with Spiska's competitors. There was no proof, however, that the dealings materialized into actual agreements; nor was there evidence of the time frame any dealings occurred.

[¶ 13.] At the trial court, Spiska presented a contract between Thermo–Shield and Thermo–Shield Germany (Competitor) dated December 1, 2000. Although Thermo–Shield had cancelled its contracts with Spiska by letter dated September 15, 2000, Spiska claims that Thermo–Shield entered into discussions with its competitor prior to cancellation. Since Spiska did not have evidence that the discussions materialized into agreements, he was left to theorize that they had. Spiska pointed to the December 1, 2000 contract's reference to a September 1, 2000 Licensing Agreement between Thermo–Shield and Competitor. Spiska contends that Thermo–Shield had motive to withhold the contract because it would have created a trail for other discovery which would have proved Thermo–Shield breached the contract before terminating it.

[¶ 14.] The lack of other evidence to show that Thermo–Shield had an agreement with the Competitor prior to canceling Spiska's contract influenced the trial court's decision. The trial court found:

> There is no evidence that any Contract of any kind was entered with the German Corporation prior to [Thermo–Shield's cancellation notice]. [T]here was no intentional withholding of the German Contract. That the German Contract would have minimal influence on the arbitration, and that the failure to provide this Contract did not establish an arbitration that was procured by undue means.

[¶ 15.] Spiska claims that the record, supplemented by three newly-acquired documents not before the arbitrator or trial court, proves Thermo–Shield's dealings and agreements with Competitor occurred before Thermo–Shield cancelled its agreements with Spiska. This evidence,

---

3. Spiska admits that his signature is on the document but denies having seen the document before it was presented at arbitration.

4. Spiska's agreements with Thermo–Shield included reduced pricing.

attained by Spiska through litigation involving its European distributors and Competitor, is as follows:

(1) Letter from Thermo–Shield's agent (dated January 27, 2003);

(2) Memorandum of Understanding (signed by Raver and principle of German competitor)—Sole Distributorship Agreement/Exclusive Licensing and Know-how Agreement (dated September 1, 2000);

(3) Memorandum of Understanding (signed by Raver and principle of German competitor)—Establishment of LLC under German Law (dated September 1, 2000).

Spiska claims these documents were critical in its ability to prepare its case and cross-examine witnesses. Spiska points to *Chevron Transp. Corp. v. Astro Vencedor Compania Naviera,* 300 F.Supp. 179, 181 (1969). In *Chevron,* port logs were not made available to Chevron until after arbitration. It was, however, provided portions of the logs prior to the close of arbitration. The court concluded that in maritime proceedings, port logs were an important item of documentary evidence that all parties should have access to from the outset. *Id.* at 181. However, the court said that the record was unclear what portions of the log were undisclosed during arbitration. Without being able to determine if the undisclosed portions "contained information which would have been helpful to Chevron," the court denied vacating the arbitration award. *Id.* at 182. The denial was "without prejudice, however, to Chevron's right to move to reargue on the sole issue of whether or not its rights were prejudiced by the apparent failure of the panel to insure that all portions of the relevant [documents] were made available to Chevron prior to the close of evidence." *Id.*

[¶ 16.] In this case, the trial court reviewed the arbitration record, heard testimony, and considered the one contract that Spiska had attained after arbitration. Our review is limited to whether the trial court erred in its factual findings and conclusions. We cannot say that the trial court erred based upon the evidence before it. However, the record has now been supplemented with documents that were not considered by the trial court. Under these circumstances, we remand for the trial court to reconsider its decision of whether the arbitration award was procured by undue means taking into consideration the newly discovered documents. The trial court should determine in light of the new documents whether Thermo–Shield acted in bad faith in withholding the evidence; and if so, whether there is a nexus between the bad faith behavior and the procurement of the arbitration award.

[¶ 17.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.