## In re Robinson/Keir Partnership, Jack C. Keir & Jack C. Keir, Inc.

[573 A.2d 1188]

No. 87-422

Present: Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed February 9, 1990

Motion for Reargument Denied March 7, 1990

*Valsangiacomo, Detora, McQuesten, Rose & Grearson, P.C.,* Barre, for Plaintiff-Appellee.

*William Alexander Fead,* South Burlington, for Defendant-Appellant.

**Gibson, J.** Lenord Robinson appeals from an order of the Washington Superior Court granting his partner, Jack Keir, the right to purchase Robinson's interest in their partnership, as provided in an arbitrator's award. We affirm.

## I.

Lenord Robinson and Jack Keir entered into a written partnership agreement on May 22, 1981 to develop and sell land in Warren, Vermont. The agreement contained a provision for binding arbitration to settle any controversies, claims, or breaches arising out of the agreement.

In October of 1985, Robinson filed a demand for arbitration with the American Arbitration Association, requesting a determination of the proper division of the assets and liabilities of the partnership. Following a hearing, the arbitrator issued an award on July 15, 1986 that gave Robinson the right to purchase Keir's interest within ninety days; in the event Robinson chose not to exercise that right, the award provided for Keir to succeed to sole ownership of the business. Robinson would remain indebted to the partnership in either case since the part-

nership had a negative net worth and Robinson's contribution was far less than Keir's. Robinson filed a motion to vacate or modify the award in superior court, which remanded the matter to the arbitrator for reconsideration. The arbitrator reaffirmed his original award, and Keir filed a motion to confirm it. The court confirmed the award without a hearing on January 14, 1987, and appointed Keir the sole owner of the partnership assets. Robinson moved to vacate the judgment, or in the alternative, for a new trial. On June 12, 1987 the court found that the arbitrator had gone beyond the parties' demand, and, accordingly, modified the award to exclude the provisions that required a buyout within ninety days. Keir then filed a motion to amend the order to restore his right to buy out Robinson. Robinson appeals the July 27, 1987 order granting that motion.

## II.

We note initially that "'Vermont has a strong tradition of upholding arbitration awards whenever possible.'" *Matzen Constr., Inc. v. Leander Anderson Corp.*, 152 Vt. 174, 177, 565 A.2d 1320, 1322 (1989) (quoting *R.E. Bean Constr. Co. v. Middlebury Assoc.*, 139 Vt. 200, 204, 428 A.2d 306, 309 (1980)). In reviewing an arbitration award, the trial court acts as an appellate tribunal with a limited scope of review rather than as a second arbitrator. *Matzen*, 152 Vt. at 177, 565 A.2d at 1322; see also *Muzzy v. Chevrolet Division*, 153 Vt. 179, 183–86, 571 A.2d 609, 612–14 (1989) (review of arbitration award severely limited). An award may not be vacated on an issue of law unless the arbitrator manifestly disregards the law. See *Muzzy*, 153 Vt. at 185, 571 A.2d at 612. We take this approach because we are mindful of the importance of arbitration as an alternative to the courts. The continuing increase in the business of the courts heightens the need for such alternatives. Without a due respect for the arbitrators' determinations, arbitration proceedings would become just another expensive and time-consuming layer in the already burdened litigation process. *R.E. Bean Constr. Co.*, 139 Vt. at 204–05, 428 A.2d at 309. Nevertheless, we will not "rubber stamp" arbitrators' decisions, as such a practice would only cause litigants to hesitate in entrusting their disputes to

the arbitration process, thus defeating its very purpose. *Id.* at 205, 428 A.2d at 309.

## A.

First, we must consider whether the court had authority under the Vermont Arbitration Act (Act), 12 V.S.A. §§ 5651–5681, to compel a buyout of the partnership interests. Robinson contends that the court exceeded the scope of its authority when it amended its June 12, 1987 order to restore Keir's buyout right under the award. We agree with Keir, however, that the court properly exercised its authority to confirm the original award when it amended its earlier order.

■■ Robinson argues that once the court determined that the arbitrator had exceeded his authority by ordering a buyout within ninety days, it was precluded from amending that order. Specifically, Robinson contends that the court was bound by its earlier order and, thereafter, was without subject matter jurisdiction to grant Keir's motion to amend the order. This argument is fallacious. Pursuant to V.R.C.P. 59(e), within ten days of the June 12 order, Keir moved for the court to amend the order to allow Keir to buy out Robinson. Rule 59(e), which is substantially similar to Federal Rule 59(e), gives the court broad power to alter or amend a judgment. Reporter's Notes, V.R.C.P. 59. The federal courts invoke Rule 59(e) "to support reconsideration of matters properly encompassed in a decision on the merits." *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 451 (1982). "Under rule 59(e), the court may reconsider issues previously before it, and generally may examine the correctness of the judgment itself." *Ray E. Friedman & Co. v. Jenkins*, 824 F.2d 657, 660 (8th Cir. 1987) (citations omitted). Accordingly, in the instant case, the court had the authority to amend its previous order in order to allow Keir to buy out Robinson.

## B.

Next, we consider whether the parties' partnership agreement and subsequent submissions authorized the arbitrator to compel a buyout of the partnership interests. Robinson con-

tends that his only desire in demanding arbitration was to determine the cost for a buyout if one were desired, rather than to obtain an order to do so under pain of losing his interest in the partnership. He supports this contention by pointing to his demand for arbitration, claiming that the demand asks only for terms upon which an equitable division of partnership assets could occur, not for terms compelling a buyout.

The agreement to arbitrate is a contract, and "an arbitrator's authority finds its source in contract." *R.E. Bean Constr. Co.*, 139 Vt. at 209, 428 A.2d at 311. Accordingly, the authority of the arbitrator is defined by the issues the parties agree to submit. See *Ramos Iron Works, Inc. v. Franklin Constr. Co.*, 174 Conn. 583, 587, 392 A.2d 461, 463 (1978). Further, submissions to arbitrators are generally construed as broadly as possible in order to quickly and economically resolve disputes. *Members Ins. Co. v. Felts*, 42 Cal. App. 3d 617, 623, 117 Cal. Rptr. 54, 58 (1974); *Security Mutual Casualty Co. v. Harbor Ins. Co.*, 77 Ill. 2d 446, 449–50, 397 N.E.2d 839, 841 (1979). Consequently, "[a]ny doubts about the scope of the submission[s] . . . should be resolved in favor of coverage." *Kurt Orban Co. v. Angeles Metal Systems*, 573 F.2d 739, 740 (2d Cir. 1978).

Despite the broad construction to be placed on a request for arbitration, a court may review a claim that the arbitrator exceeded the authority conferred on him or her by the parties. 12 V.S.A. § 5677(a)(3) (court shall vacate award where arbitrator exceeded his authority); *McClatchy Newspapers v. Central Valley Typo.*, 686 F.2d 731, 733 (9th Cir. 1982); *Maine Cent. R.R. v. Bangor & A. R.R.*, 395 A.2d 1107, 1122 (Me. 1978). Such a determination, however, must be based on evidence clearly demonstrating that the arbitrator exceeded his authority. *Broward County Paraprofessional Ass'n v. McComb*, 394 So. 2d 471, 472 (Fla. Dist. Ct. App. 1981).

In order to determine if the arbitrator exceeded his authority, the court must compare the arbitrator's award with the submissions of the parties. See *Piggly Wiggly Warehouse, Inc. v. Piggly Wiggly Truck Drivers Union*, 611 F.2d 580, 583 (5th Cir. 1980); *Cook v. Carpenter*, 34 Vt. 121, 126 (1861). In *Piggly Wiggly*, the Fifth Circuit held that the scope of an arbitrator's au-

thority is not necessarily limited to the terms set forth in the collective bargaining agreement, as the parties often expand that authority by supplementing the agreement with submissions that further define the issues. 611 F.2d at 583. Thus, the original document confers authority upon the arbitrator, but that authority may be expanded by the submissions of the parties. See *id.* Since the partnership agreement does not grant the arbitrator authority to order a buyout, we must determine whether the parties, by their submissions, intended to confer such authority upon the arbitrator.

The demand for arbitration filed by Robinson sought "a remedy" of an award of certain partnership property in addition to $200,000 in partnership liabilities, with the remaining assets and debts to be assumed by Keir.* Thus, the demand sought a distribution of the assets and liabilities of the partnership, which is essentially the same course that would be followed if one partner chose to leave the partnership. In such an event, the partnership would be dissolved and the assets remaining after the liabilities had been satisfied would then be distributed. In essence, that is exactly what Robinson asked for here; he wanted a remedy, not an assessment of the partnership finances. Hence, the demand alone indicates that Robinson contemplated a buyout order, albeit on terms significantly different from those he was given.

■ But we need not rely solely on Robinson's demand to conclude that he contemplated a buyout. Robinson's brief to the arbitrator refers to a buyout in four separate places. In each instance, the reference is to how much each partner should pay

---

* Robinson's "Demand for Arbitration," in pertinent part, reads as follows:
> The general nature of the dispute is over the proper division of the assets and liabilities of the partnership.
> The partnership has liabilities in the area of $685,000. The value of the assets is in dispute but is probably less than the liabilities. In addition, there is a dispute as to ownership over certain assets as to whether they are individually owned by the partners or by the partnership. My best judgment is the amount in dispute is between $80,000 to $160,000.
> Mr. Robinson seeks a remedy of an award to him of certain property known as "Blueberry Lake", a personal assumption by him of approximately $200,000 in partnership liabilities, transfer of the remaining assets of the partnership to Mr. Keir in return for payment of certain other debts of the partnership.

to buy out the other. Moreover, a letter written to Keir in late 1984, in which Robinson proposed a settlement of the partnership accounts, indicates that Robinson was interested in ending the partnership. That letter specifically refers to terms upon which the partnership might be terminated. In his reply letter, Keir specifically acknowledges that the two parties had discussed an ending to their partnership. Thus, both parties, prior to the demand for arbitration, indicated that they were interested in a buyout; the only controversy was the price at which one partner would buy out the other.

Robinson further argues that the Statute of Frauds prohibits any oral submissions tending to extend the scope of the authority of the arbitrator to order a conveyance of land. We need not address this issue, as it was not raised either before the arbitrator or the superior court. See *Joder Building Corp. v. Lewis*, 153 Vt. 115, 120–21, 569 A.2d 471, 473–74 (1989). In any case, the written submissions were sufficient for the arbitrator to assume that the parties sought a buyout award, and the record contains no evidence that the arbitrator relied on anything other than these submissions in fashioning the award.

## C.

Robinson next argues that parts of the arbitrator's award determined the rights of a person not a party to the arbitration—i.e., the corporation Jack C. Keir, Inc. While this is technically true, Keir represents the interests of Jack C. Keir, Inc. Indeed, Robinson's brief to the arbitrator combined the contributions of Keir and the Keir corporation in order to determine the value of the partnership. Thus, the arbitrator's treatment of Keir and the Keir corporation as one was within the scope of the authority given to him by the parties. See *Cook*, 34 Vt. at 126.

Robinson also argues that he is in danger of being held liable twice for the Keir corporation's loans to the partnership, once on the arbitration award and once on a suit by the corporation. While this claim may have merit in some future litigation, as of now it is purely speculative and not properly before this Court. Courts will ordinarily not render decisions involving events that are contingent upon circumstances that may or may not occur in the future. See *Thomas v. Union Car-*

*bide Agricultural Prods. Co.*, 473 U.S. 568, 580–81 (1985). Robinson may raise this issue later if a controversy arises, but at this point, his concern about double recovery is premature. See *Lane Constr. Corp. v. Vermont Elec. Generation & Transmission Coop.*, 150 Vt. 419, 420–21, 553 A.2d 1096, 1098 (1988). We may render an opinion upon a question of law only where there is actual and bona fide litigation. See *Louis Anthony Corp. v. Department of Liquor Control*, 139 Vt. 570, 572, 432 A.2d 1186, 1187 (1981).

### D.

██ Robinson next argues that the award should have been vacated because it does not provide for indemnification of the selling party by the buying party with respect to the debt apportioned between them. According to Robinson, the failure of the arbitrator to so provide results in an incomplete award and constitutes prejudicial misconduct. We disagree. Robinson's demand does not contain a request for indemnification, or any similar relief. Moreover, the determination of the value of the partnership included all of the partnership liabilities, the only debts for which indemnification would be necessary. Since the liabilities are included in determining the buyout figures, all of those debts would be settled upon the dissolution of the partnership. At that point, Keir, as owner after the buyout, would be liable for all outstanding debts. In short, Robinson has failed to provide any evidence of misconduct prejudicing the rights of a party as contemplated by 12 V.S.A. § 5677(a)(2) or (3). The trial court did not manifestly disregard the law when it refused to vacate the award on this basis.

### E.

██ Robinson's final argument is that the July 27, 1987 order is so uncertain as to require reversal. This argument is without merit. The order was a reinstatement of the original award of the arbitrator, which was not uncertain.

*The July 27, 1987 order of the superior court is affirmed.*