2005 VT 75

**Patrice M. BRINCKERHOFF v. Robert M. BRINCKERHOFF**

[889 A.2d 701]

No. 03-284

¶ 1. July 15, 2005. Husband appeals from a family court order confirming an arbitration award for distribution of the marital estate and spousal maintenance in a divorce proceeding, and from a related order denying a motion to modify the award. Husband contends the court erred because the arbitrators exceeded their authority, and violated his constitutional rights, by: (1) relying on fault as a basis for dividing the marital estate; (2) awarding spousal maintenance and dividing the property contrary to the terms of the arbitration agreement and the parties' pleadings; (3) treating the parties' inheritances in a disparate manner; and (4) failing to apply a coverture fraction to certain marital assets. We affirm.

¶ 2. The parties were married in 1975, and had two children who were both over the age of majority at the time of these proceedings. Husband had worked throughout the marriage, and continued to work, as a broker with Merrill Lynch, earning a considerable income and compiling several substantial investment and retirement accounts. Wife worked principally as a homemaker. Both parties had also acquired property through inheritance. Their combined wealth totaled about $4 million.

¶ 3. Wife commenced a divorce action in 2000. In April 2001, the parties entered into an "Agreement to Submit Divorce to Mediation/Arbitration." Pursuant to the agreement, a panel of three arbitrators heard evidence on the first day of the arbitration hearing, adjourned for a mediation session before one of the panel members on the second day, and recon-

vened to hear further evidence on the third day.[1] A principal focus of dispute at the hearing was the value and legal status of several investment accounts and inheritances, with each side presenting substantial evidence, including expert testimony. On June 15, 2001, the panel issued a written decision containing extensive findings of fact and conclusions of law. The panel awarded spousal maintenance to wife of $10,000 per month for six months, increasing to $12,000 per month (with adjustments for inflation) until she reached the age of sixty-five (approximately twenty years), and awarded wife sixty percent and husband forty percent of the marital assets.

¶ 4. Following the panel's decision, husband filed a succession of motions to modify or vacate the award. The panel issued a slightly amended arbitration decision in response to the first motion in November 2001, and denied a second motion in February 2002. Wife then filed a motion in family court to confirm the award and husband moved to modify or vacate. See 12 V.S.A. § 5676 (authorizing application of party to confirm, modify, or vacate arbitration award). In April 2002, the court issued a written decision, granting wife's motion and denying husband's. In October, after several additional procedural steps, the court confirmed a final arbitration award, and denied husband's motion to amend under V.R.C.P. 59(e). Husband then filed an additional motion to amend the judgment under V.R.C.P. 59(e), or for relief from judgment under V.R.C.P. 60(b), which the court denied in May 2003. Husband has appealed the court's orders confirm-

---

[1] The panel consisted of the Hon. Alden T. Bryan, Superior Judge (Ret.), and two experienced Vermont attorneys, Christopher L. Davis, Esq. and Susan M. Murray, Esq.

ing the final arbitration award and denying his motion to amend.

¶ 5. We note at the outset that our review is limited. "Vermont has a strong tradition of upholding arbitration awards whenever possible." *R.E. Bean Constr. Co. v. Middlebury Assocs.*, 139 Vt. 200, 204, 428 A.2d 306, 309 (1980). Indeed, we have long recognized "the importance of arbitration as an alternative to litigation for the efficient resolution of disputes," understanding that, if courts were accorded a broad scope of review, "then arbitration would become merely 'another expensive and time consuming layer to the already complex litigation process.'" *Springfield Teachers Ass'n v. Springfield Sch. Dirs.*, 167 Vt. 180, 183-84, 705 A.2d 541, 543-44 (1997) (quoting *Bean*, 139 Vt. at 204-05, 428 A.2d at 309). Accordingly, the trial court acts "in effect, as an appellate tribunal with a limited scope of review." *Matzen Constr., Inc. v. Leander Anderson Corp.*, 152 Vt. 174, 177, 565 A.2d 1320, 1322 (1989) (quotation omitted). The court may "not reweigh the evidence presented to the arbitrator or subject the merits of the controversy to judicial review." *Id.* (quotation omitted). Rather, the court must confirm an award unless "there exist statutory grounds for vacating or modifying" it, or the parties were denied due process. *Springfield Teachers Ass'n*, 167 Vt. at 184, 705 A.2d at 544.

¶ 6. The Vermont Arbitration Act defines the grounds for modifying or vacating an arbitration award. 12 V.S.A. § 5677.[2] Husband relies principally on

§ 5677(a)(3), asserting that the arbitrators here "exceeded their powers," and thereby violated his right to due process. We have recognized that under this section "a court may review a claim that the arbitrator exceeded the authority conferred on him or her by the parties." *In re Robinson/Keir P'ship*, 154 Vt. 50, 55, 573 A.2d 1188, 1191 (1990). We have also cautioned, however, that such a determination "must be based on evidence clearly demonstrating that the arbitrator exceeded his authority," and that any doubts about the scope of the parties' agreement "should be resolved in favor of coverage." *Id.* (quotation omitted).

¶ 7. Husband advances three specific claims of error in this regard. First, he contends the arbitrators exceeded the terms of the arbitration agreement by considering fault as a factor in allocating the marital estate.[3] The claim is entirely

<hr>

[2] Section 5677(a) provides that a court may vacate an arbitration award where:

(1) the award was procured by corruption, fraud or other undue means;

(2) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(3) the arbitrators exceeded their powers;

(4) the arbitrators refused to postpone the hearing after being shown sufficient cause to do so, or refused to hear evidence material to the controversy, or otherwise conducted the hearing, contrary to this chapter so as to prejudice substantially the rights of a party; or

(5) a court has found that there was no arbitration agreement and the party did not participate in the arbitration hearing without raising the objection.

[3] The arbitrators found that fault should be attributed to husband for several

without merit. The parties' arbitration agreement does not exclude fault, or indeed any other factor, from the arbitrators' consideration in dividing the marital estate. On the contrary, it expressly provides that "the arbitrators will follow the law of the State of Vermont in arriving at a decision on property division and spousal maintenance (Title 15 V.S.A. §§ 751, 752)." Consistent with this mandate, the arbitrators here carefully reviewed each of the statutory factors governing the division of property, including § 751(b)(12) ("the respective merits of the parties"), which permits consideration of fault, including extramarital affairs. *Weaver v. Weaver*, 173 Vt. 512, 513, 790 A.2d 1125, 1127 (2001) (mem.); *Lewis v. Lewis*, 149 Vt. 19, 23-24, 538 A.2d 170, 173 (1987).

¶ 8. Husband asserts nevertheless that the agreement excluded wife's testimony concerning the issue of fault because it was not presented on the first day of the arbitration hearing. He relies on a provision of the agreement setting forth the order for the presentation of evidence. The provision states that wife "shall present her claim during the first day in summary fashion," husband "will then have an opportunity to present his claim and response," and wife will then have a brief rebuttal. The agreement goes on to provide that following the first session, the parties will proceed on the second day to mediate before a single arbitrator "any and all issues remaining in dispute," and that if a resolution has not been reached the full panel will reconvene on the third day for each party "to present any evidence or oral argument in connection with the parties' respective positions on the issues."

¶ 9. Husband contends the agreement's reference to the presentation of

extramarital affairs that contributed to the breakup of the marriage.

each party's "claim" on the first day of arbitration implies that any issue or evidence not raised on the first day was waived. Because the first day of the arbitration hearing was devoted to argument by counsel and the presentation of evidence relating to the parties' respective financial circumstances, husband asserts that wife's testimony concerning his extramarital affairs — presented on the third day — was beyond the scope of the agreement. The argument is unpersuasive. Nothing in the agreement states that each party's "claim" on the first day of arbitration must include all issues or evidence to be raised and presented thereafter; indeed, the provision allowing each side on the third day of arbitration "to present any evidence or oral argument in connection with the parties' respective positions on the issues" suggests precisely the contrary. Furthermore, husband's claim challenges a procedural aspect of the arbitration. Absent specific provisions to the contrary in the arbitration agreement, however, arbitrators have the discretion to do justice as they see fit, "making an award reflecting the spirit rather than the letter of the agreement." *Silverman v. Benmor Coats, Inc.*, 461 N.E.2d 1261, 1266 (N.Y. 1984). Given the strong presumption in favor of coverage, and the absence of any evidence "clearly demonstrating that the arbitrator exceeded his authority," *Robinson/Keir*, 154 Vt. at 55, 573 A.2d at 1191, we cannot conclude that the evidence of fault was beyond the scope of the agreement.[4]

---

[4] Husband also refers in passing to a provision in the agreement that the wife "shall not submit new charts and/or exhibits on subjects other than those disclosed as of April 11, 2001." The relevance of this provision to the argument is unclear. The agreement was dated April

¶ 10. Along the same lines, husband contends the spousal maintenance award exceeds the scope of the agreement because the arbitrators provided for maintenance until wife reaches the age of sixty-five (twenty years from the date of arbitration), whereas she had requested maintenance for only fifteen years, or until she reached the age of sixty. Thus, husband asserts that the award exceeded wife's actual "claim." Again, however, nothing in the agreement confines the arbitrators' decision to the proposals submitted by the parties. On the contrary, the parties expressly agreed that the arbitrators would follow Vermont law in arriving at a decision on property and maintenance, and the law vests broad discretion in the decision-maker to craft a just and equitable award. See *Lewis*, 149 Vt. at 22, 538 A.2d at 172) (court is not bound by stipulation of parties, but acts within its discretion in making different disposition of property based on evidence before it). Accordingly, we discern no evidence "clearly demonstrating" that

the spousal maintenance award exceeded the arbitrators' authority. *Robinson/Keir*, 154 Vt. at 55, 573 A.2d at 1191.[5]

¶ 11. Husband also contends the panel manifestly disregarded the law by ignoring evidence relating to his health, medical history, lifestyle, and industry "burnout," and by failing to make findings on wife's future unearned income. Husband's claim, however, amounts to nothing more than an impermissible attack on the merits of the panel's decision. See *Springfield Teachers Ass'n*, 167 Vt. at 184, 705 A.2d at 544 (we will not review the arbitrator's decision for errors of fact or law). Furthermore, the record discloses that the panel's extensive findings included several devoted to husband's health, medical history, and job-related stress, as well as wife's financial circumstances. Accordingly, we discern no basis to disturb the trial court judgment confirming the arbitrators' decision.

¶ 12. Husband advances a similar argument with respect to the arbitrators' property division, noting that wife had submitted a memorandum proposing a fifty/fifty division of the marital estate, while the panel awarded a sixty/forty split in her favor. Again, nothing in the agreement limits the arbitrators' otherwise express mandate to follow the law, which provides for broad discretion to render an equitable property division regardless of the parties' initial proposals. See *Lewis*, 149 Vt. at 22, 538 A.2d at

---

12, 2001. Nothing in the record suggests that wife's testimony concerning fault involved any "charts" or "exhibits," and nothing suggests that the subject was "new." Indeed, wife had raised the issue of fault in family court months before the arbitration, resulting in a filing entitled "Plaintiff's Disclosure of Fault on the Part of Defendant" in which she set forth in detail the factual background of her later testimony concerning husband's extramarital affairs. We note, as well, that husband was not only aware of the substance of wife's testimony, but testified in his own defense — and without objection — on the subject at the arbitration hearing. See *Joder Bldg. Corp. v. Lewis*, 153 Vt. 115, 119-20, 569 A.2d 471, 473-74 (1989) (failure to raise issue before arbitrator waives right to object before court).

---

[5] It is worth noting in this regard that although wife had indeed proposed maintenance for fifteen years, she had also requested payments of more than $23,000 per month, while the arbitration panel, in awarding a longer award, imposed a substantially lower monthly payment of $10,000 to $12,000 per month, with adjustments for inflation.

172. Furthermore, we note that the arbitrators here explained that the disproportionate property division was based, in part, on the fact that they were awarding wife far less maintenance than they might otherwise have provided, in recognition of husband's argument that he needed an incentive to keep working and did not want to feel that he was "working just for [wife]." See *Johnson v. Johnson*, 158 Vt. 160, 163, 605 A.2d 857, 859 (1992) (noting interrelationship of property division and maintenance awards); 15 V.S.A. § 751(b)(7) (one factor in property settlement is whether it "is in lieu of or in addition to maintenance"). Thus, we discern no error warranting reversal of the court's decision confirming the award.

¶ 13. Husband next claims that the trial court erred in denying his joint motion to amend the judgment under V.R.C.P. 59(e) and for relief from judgment under V.R.C.P. 60(b). The trial court correctly ruled, however, that the motion to amend the judgment amounted to little more than a motion to modify the arbitration agreement, which the court had previously rejected on several occasions based on husband's failure to demonstrate error on any of the grounds set forth in 12 V.S.A. § 5677. The court also properly rejected husband's claim of newly discovered evidence, noting that husband's reliance on changes in the stock market and an alleged deterioration of his health could form the basis for a motion to modify based on a real, substantial, and unanticipated change of circumstances but did not represent new evidence warranting a modification of the property division. See *Valyou v. Estate of Valyou*, 162 Vt. 640, 640, 653 A.2d 764, 765 (1994) (mem.) (property dispositions are not executory and subject to modification for changed conditions under V.R.C.P. 60(b)); *Viskup v. Viskup*, 149 Vt. 89, 90, 539 A.2d 554, 555-56 (1987) (absent evidence of fraud or coercion,

property division in divorce decree is generally final).

¶ 14. Finally, husband asserts that the arbitrators violated his due process and equal protection rights by: (1) crediting him with the original amount of an inheritance from an uncle ($418,000) rather than the amount by which it had appreciated ($675,000), and finding that wife had no equitable interest in certain accounts in her mother's name; and (2) concluding that two assets, known as the Weather-Builder and FCCAAP accounts, were more in the nature of deferred compensation than retirement accounts, and therefore declining to apply a coverture fraction to the assets. See *Hayden v. Hayden*, 2003 VT 97, ¶ 11, 176 Vt. 52, 838 A.2d 59 (when court apportions pension, it must apply coverture fraction to reflect proportion attributable to marriage). As the trial court here cogently observed, however, these issues were sharply contested at the arbitration hearing, and the fact that the panel declined to adopt husband's characterization of the inheritance and investment accounts "does not constitute an evident miscalculation or evident mistake to be modified under 12 V.S.A. § 5678(b), nor is the panel's determination *ultra vires* so as to warrant vacation of the award under 12 V.S.A. § 5677." Labeling the claims as "constitutional" in nature does not alter the fundamental accuracy of the court's observation that they represent an attack on the basic merits of the arbitrators' decision beyond the scope of our review. *Springfield Teachers Ass'n*, 167 Vt. at 184, 705 A.2d at 544. Therefore, we discern no basis to disturb the family court's orders.

*Affirmed.*

Motion for reargument denied August 18, 2005. Motions for reconsideration denied September 1, 2005 and September 27, 2005.