Filed 07/15/25

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 24-CV-05533

---

Irene Hinsdale, et al v. John O'Donnell, Esq., et al

---

## DECISION ON MOTIONS TO DISMISS

In this case, Plaintiffs Irene Hinsdale and her two children—Laura Hinsdale Clark and Jacob Hinsdale—have sued an attorney (John O'Donnell), an accountant (Claude Schwesig), and their respective firms, alleging that their negligence in the provision of estate planning services for Ms. Hinsdale put millions of dollars at risk of taxation. Defendants move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). The court grants the motion as to Ms. Clark and Mr. Hinsdale, but denies it with respect to Ms. Hinsdale.

## FACTS

The complaint alleges the following facts. John O'Donnell is a Vermont attorney whose practice focuses on estate and gift tax planning; in 2012, he was practicing with Bergeron Paradis & Fitzpatrick ("BPF"). Clause Schwesig is a Certified Public Accountant with Herrick, Ltd. ("Herrick"); he provides accounting and estate tax planning services. All Defendants had worked with Ms. Hinsdale for years in connection with litigation over her husband's estate and the filing of income tax returns for the Hinsdale family and related entities. In 2012, O'Donnell and BPF persuaded Ms. Hinsdale that she needed estate planning services focused on the assets of the family business, which manages a number of real estate properties.

Ms. Hinsdale's estate planning goals were to pass on as much as she could to her children and to avoid the probate process as much as possible—without transferring control of the real estate because the children were too young at the time to manage commercial properties. O'Donnell and BPF ultimately created an irrevocable trust and recommended that Ms. Hinsdale transfer several real estate properties into the trust and treat the transfer as a gift for tax purposes. The trust was to convey the property to her children at Ms. Hinsdale's death. The primary purpose of the trust was to freeze the value of the transferred assets against the unified gift and estate tax exclusion. Thus, the gift/estate tax on those assets would be paid on the date of transfer, and any future growth on their value would not

later be subject to estate taxes. The 2012 transfers into the trust were to result in the transfer of approximately $5.1 million in assets and use that same amount of the gift and estate tax exemption available to Ms. Hinsdale.

Plaintiffs allege, however, that Defendants erred in completing these transactions. First, the trust made Ms. Hinsdale the creator and trustee and gave her absolute power to withdraw principal and income, and thus failed to remove any portion of the trust assets from Ms. Hinsdale's estate. While Schwesig and Herrick raised this issue with O'Donnell before the transactions were completed, O'Donnell denied there were any problems with the trust, and Schwesig and Herrick neither insisted that it be corrected nor informed Ms. Hinsdale of their concerns. Second, Defendants directed Ms. Hinsdale to file a flawed gift tax return that indicated it was for a gift of a remainder interest rather than a complete interest. Thus, the 2012 gift was arguably incomplete and might not be counted against her exemption.

Ms. Hinsdale was ultimately advised that the 2012 transactions were problematic and followed up with O'Donnell, who suggested replacing the irrevocable trust. Ms. Hinsdale then retained experienced trusts and estate counsel at another firm. At their advice, she resigned as trustee, released her right to appoint a successor trustee, and executed a release and assignment of beneficial interests. She released her right to withdraw principal and income and assigned it to her children as the new trustees. Ms. Hinsdale also acknowledged that the release would constitute a gift for federal gift tax purposes, filed a 2022 gift tax return, and disclosed the relationship of the 2022 and 2012 transactions. She spent more than $24,000 in fees and costs in this attempt to mitigate the adverse consequences of the 2012 transactions. She was ultimately required to report a total gift amount more than double the amount she would have been required to report had the 2012 transactions been completed properly. Plaintiffs allege damages in excess of $5 million as a result of Defendants' negligence.

## DISCUSSION

Plaintiffs bring one claim for professional malpractice against Attorney O'Donnell and BPF (Count I) and a second claim against Schwesig and Herrick (Count II). In separate motions, Defendants move to dismiss under Rule 12(b)(1) and (6). They argue that there is no justiciable controversy until Ms. Hinsdale dies because the potential damages are purely speculative, and that Plaintiffs lack standing.

### I. Justiciability/Speculative Damages

"Vermont courts are vested with subject matter jurisdiction only over actual cases or controversies involving litigants with adverse interests." *Brod v. Agency of Nat. Res.*, 2007 VT 87, ¶ 8,

182 Vt. 234. "A claim is ripe when there is a sufficiently concrete case or controversy, as opposed to one that is abstract or hypothetical. Courts will ordinarily not render decisions involving events that are contingent upon circumstances that may or may not occur in the future." *Echeverria v. Town of Tunbridge*, 2024 VT 47, ¶ 17 (quotations and citations omitted); *see also Doe v. Dep't for Child. & Fams.*, 2020 VT 79, ¶ 9, 213 Vt. 151 ("A claim is not ripe 'if the claimed injury is conjectural or hypothetical rather than actual or imminent.' ") (quoting *Turner v. Shumlin*, 2017 VT 2, ¶ 9, 204 Vt. 78). Moreover, as to damages generally, "[a]n injury based on speculation about uncertain future events is no injury at all." *Hedges v. Durrance*, 2003 VT 63, ¶ 12, 175 Vt. 588; *see also Fritzeen v. Gravel,* 2003 VT 54, ¶ 12, 175 Vt. 537 (mem.) (noting that there is no cause of action for legal malpractice based only on speculative damages); *Bourne v. Lajoie,* 149 Vt. 45, 53 (1987) (declining to award alleged missed-sale-opportunities damages to the plaintiff in a legal malpractice action where such damages were based on mere speculation and were unsupported by evidence of an actual offer from a prospective purchaser).

Here, Plaintiffs blithely assert that they "have suffered damages in excess of $5 million." Compl., ¶¶ 44 & 51. While ordinarily, on a motion to dismiss, the court is bound to assume the truth of the matters alleged in a complaint, it need not accept conclusory allegations. *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 10, 184 Vt. 1. From the non-conclusory allegations of the Complaint, it is clear that the damages Plaintiffs claim to have suffered have two components: the $24,000 Ms. Hinsdale incurred in "attempting to mitigate her damages" and whatever future loss her estate will incur as a result of her being "required to report a total gift amount more than double the amount she would have been required to report if the 2012 transactions had been completed properly." Compl., ¶ 36. To the extent Plaintiffs seek damages for future estate tax liability, however, such damages—whether analyzed under ripeness or failure-to-state-a-claim principles[1]—are inherently speculative and thus not recoverable at this point. *See Hiatt v. United States*, 910 F.2d 737, 745 (11th Cir. 1990) (affirming lower court's refusal to allow plaintiff to recover prematurely paid estate taxes; lower court had stated: "it is impossible to foresee what estate tax liability may be imposed under whatever tax laws may be in effect in the year . . . that [decedent] would have died but for the tortious conduct of defendant"); *Kernke v. Menninger Clinic, Inc.*, 172 F. Supp. 2d 1347, 1355 (D. Kan. 2001) ("future tax liability is too conjectural to be considered in fixing damages"); *Farrar v. Brooklyn Union Gas Co.*, 73 N.Y.2d 802, 804 (1988) ("future tax liability is not considered when determining pecuniary loss. In this case,

---

[1] The court notes that the cases addressing the propriety of recovering damages based on uncertain future tax liability, including the cases cited by Defendants, rely on the general rule prohibiting recovery of speculative damages rather than the ripeness doctrine.

the administrator seeks recovery not of an earned, fixed tax credit, but of an inchoate one which decedent may have earned in futuro assuming at least these key factors remained the same—the amount and assets of the estate, the decedent's tax status, and the tax law itself. These are uncertain, dependent on future changeable events and, thus, inherently speculative.") (citation omitted); *Harmeyer v. W.M.*, No. C8-00-1191, 2001 WL 122141, at *3 (Minn. Ct. App. Feb. 5, 2001) ("Attempting to calculate future tax consequences requires speculation as to when Harmeyer will die, what the value of her estate will be, and what the tax law will be at the time of her death. The district court did not err in concluding that damages to Harmeyer's estate resulting from Gustafson's drafting of the quitclaim deed are too remote and speculative to determine."); *Pietz v. Toledo Tr. Co.*, 63 Ohio App. 3d 17, 23 (1989) (existence of damages incurred by testator's sons as result of amendment to trust agreement was speculative where it depended upon amount of spouse's "estate *at her death* and the tax laws in effect at that time") (emphasis in original); *Sherman v. Shub*, No. SUCV200702547BLSI, 2011 WL 3672031, at *2 (Mass. Super. Ct. June 16, 2011) ("Here, even assuming that there are no changes in the Shermans' personal circumstances and the size of their estates at the time of their future deaths, the court can make no such assumptions with respect to the federal and state tax statutes that may then be in effect. For example, there is currently no federal estate tax. And while the plaintiffs' claim that 'it would be folly to assume this will remain the state of affairs for very much longer,' the court is not in a position to divine the future intent and/or actions of Congress or to make such a prognostication.") (footnote omitted); Martin D. Begleiter, *First Let's Sue All the Lawyers--What Will We Get: Damages for Estate Planning Malpractice*, 51 Hastings L.J. 325, 350 (2000) ("It is, of course, [] possible, either due to the lack of other assets or because of the repeal or alteration of the estate tax, that no tax will be incurred because of the attorney's error.").

Plaintiffs cite several Vermont cases in an attempt to show that their claim for future estate damages should survive the motion to dismiss. *See*, *e.g.*, *Est. of Harris v. Eichel*, 152 Vt. 180 (1988); *Benson v. MVP Health Plan, Inc.*, 2009 VT 57, 186 Vt. 97; *Cabot v. Cabot*, 166 Vt. 485, 495–97 (1997); *Chilkott v. Chilkott*, 158 Vt. 193, 196–98 (1992); *Brinckerhoff v. Brinckerhoff*, 2005 VT 75, ¶ 3, 179 Vt. 532; *Victor v. Victor*, 142 Vt. 126, 129 (1982). None of these cases is persuasive. *Harris* and *Benson* merely demonstrate that some claims for estate planning malpractice can accrue before the client's death; they do not address the issue of speculative damages. *Cabot*, *Chilkot*, *Brinckerhoff*, and *Victor* are merely examples of courts valuing marital estates, trusts, pensions, or other future inheritances based on expert testimony. In *Cabot*, the trial court had properly considered the potential tax consequences of selling certain marital assets in valuing the marital estate in a divorce action,

where the husband "presumably had to liquidate assets to pay [wife], and consequently incurred tax liability on the sales." *Cabot*, 166 Vt. at 496. None of these cases, however, undercuts this court's conclusion that trying to determine uncertain estate tax liability that may occur years in the future is inherently speculative and, consequently, not currently recoverable.

Plaintiffs' reliance on the Court's favorable citation of *Fawcett v. Sun Life Assur. Co. of Canada*, 135 F.2d 544, 546 (10th Cir. 1943) in *Winton v. Johnson & Dix Fuel Corp.*, 147 Vt. 236, 242–43 (1986) is also wholly misplaced. *Fawcett* involved a misrepresentation by a life insurance company that a benefit payable upon death would be "free and clear of all federal estate insurance taxes" based on an IRS ruling that did not, in fact, exist. *Fawcett*, 135 F.2d at 545. The complaint there sufficiently stated a claim because, relying upon the company's misrepresentation, the plaintiff "parted with $44,000 [to pay an insurance premium] which he would not have done otherwise." *Id*. at 546. In that respect, *Fawcett* simply foreshadows this court's determination that Ms. Hinsdale's claim for her present, out-of-pocket loss can survive, while any claim for speculative future losses cannot.

Although Plaintiffs' claim for future estate tax liability is inherently speculative, the same cannot be said for the $24,000 alleged to have been paid to other attorneys to mitigate Defendants' alleged malpractice. This amount is plainly not speculative; it has already been incurred. Defendants contend that the mitigation of uncertain future damages does not count as harm for purposes of establishing justiciability, citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415–18 (2013) and *Pena v. Brit. Airways, PLC (UK)*, 2020 WL 3989055, at *3 (E.D.N.Y. Mar. 30, 2020). The cases they cite, however, involved foreign surveillance and identify theft, far removed from the factual scenario here. Furthermore, "[t]here exists a general duty to mitigate damages," *Schnabel v. Nordic Toyota, Inc.*, 168 Vt. 354, 361 (1998), and Plaintiffs should not be punished for taking reasonable, proactive steps to eliminate the possibility of millions more in future estate tax liability. *See also* Begleiter, *supra*, 51 Hastings L.J. at 343 ("However, if the attorney's negligence has required the plaintiff to employ other attorneys to correct the errors, the fees paid to the other attorneys are recoverable as damages because they are reasonably foreseeable consequences of defendant attorney's negligence. In short, damages will include the fees paid to other attorneys to cure, attempt to cure (even if unsuccessful) or mitigate the damage caused by the attorney's negligence.") (footnotes omitted). Thus, the action can proceed on that basis.

## II. <u>Standing</u>

Defendants also contend that all Plaintiffs lack standing. They point out that "to have standing, a plaintiff must 'have suffered a particular injury that is attributable to the defendant and that can be

redressed by a court of law.' " *Ferry v. City of Montpelier*, 2023 VT 4, ¶ 12 (quoting *Parker v. Town of Milton*, 169 Vt. 74, 77 (1998)). As to Ms. Hinsdale, Defendants apparently argue that she lacks standing because she will not suffer an injury until she dies. As discussed above, however, Ms. Hinsdale has already incurred damages through the $24,000 she spent to fix the problems with her trust. That is sufficient to show standing at this point. Clearly, however, Ms. Hinsdale lacks standing to pursue any claim for damage to her estate. Whether or not that claim is speculative, it is certain that it is not Ms. Hinsdale but her estate who will experience any loss. Thus, that claim is not hers to pursue.

As to Ms. Hinsdale's two children, Defendants contend that they lack standing because they had no attorney-client or accountant-client relationship with Defendants. The court questions whether "standing" is the correct lens through which to view this argument. *See generally* Wright & Miller, 13A Fed. Prac. & Proc. Juris. § 3531 (3d ed.) ("The fascination of complex standing doctrine and the concern to observe constitutional limits on the judicial power occasionally lead courts to invoke public-law concepts to resolve concerns that are better addressed through private-law concepts."). Notably, in attorney malpractice cases, the privity question is ordinarily addressed as part of the element of duty, that is, whether the attorney owes a duty of care to a particular person. *See, e.g.*, *Strong v. Fitzpatrick*, 2017 VT 35, ¶ 11, 204 Vt. 452; *Hedges v. Durrance*, 2003 VT 63, ¶ 7, 175 Vt. 588; *Bovee v. Gravel*, 174 Vt. 486, 487 (2002). The court need not wade into these waters, however, because the children's claims fail for a more fundamental reason: they have not alleged any compensable injury. As discussed above, the potential estate tax liability is pure speculation until Ms. Hinsdale dies. And there is no allegation that the children paid any of the funds to remedy the faulty trust. *See* Compl. ¶¶ 34, 36 ("*Ms. Hinsdale* ultimately retained experienced trusts and estate counsel at Dinse, P.C. to mitigate her damages. . . . *Ms. Hinsdale* spent more than $24,000 in fees and costs attempting to mitigate her damages.") (emphasis added). Damages being an essential element of any claim for relief, Ms. Clark and Mr. Hinsdale have thus failed to plead a claim for which relief can be granted.

## **ORDER**

The court grants Defendants' motions to dismiss as to Plaintiffs Laura Hinsdale Clark and Jacob Hinsdale and as to any claim Ms. Hinsdale may have asserted for future estate tax liability, but denies them in all other respects. It bears emphasis that the dismissal of Ms. Clark and Mr. Hinsdale's claims

is without prejudice to their asserting them if and when, upon their mother's death, it appears that they have been injured by Defendants' negligence.[2]

Electronically signed pursuant to V.R.E.F. 9(d): 7/15/2025 2:43 PM

_____

Samuel Hoar, Jr.
Superior Court Judge

---

[2] To be clear, Ms. Clark and Mr. Hinsdale's claim for increased estate tax exposure does not accrue until they have suffered damages. *See Est. of Alden v. Dee*, 2011 VT 64, ¶ 20, 190 Vt. 401 ("A cause of action accrues when the plaintiff discovers, or should have discovered, both *the injury* and its cause.") (emphasis added); *Vossoughi v. Polaschek*, 859 N.W.2d 643, 652 (Iowa 2015) ("the statute of limitations does not begin to run on a legal malpractice claim until the cause of action accrues. The cause of action accrues when the client sustains an actual, nonspeculative injury . . . ."); *Pietz v. Toledo Tr. Co.*, 63 Ohio App. 3d 17, 23 (1989); ("Concerning any adverse tax consequences, the extent of any tax liability to the sons depends upon the amount of Mrs. Pietz's estate *at her death* and the tax laws in effect at that time).