Kelly v. Green Mountain Union High School, No. 292-5-13 Wrcv (Teachout, J., Nov. 14, 2013).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Windsor Unit** | **Docket No. 292-5-13 Wrcv** |

**MICHAEL KELLY,**

      **Plaintiff,**

**v.**

**GREEN MOUNTAIN UNION
HIGH SCHOOL,**

      **Defendant.**

### DECISION
### MOTION TO VACATE ARBITRATION AWARD

This matter is before the court on Michael Kelly's ("Plaintiff's") Motion to Vacate Arbitration Award, filed May 8, 2013. This decision will also address Plaintiff's Request for Default Judgment, filed August 12, 2013. A hearing on the motions was held on September 20, 2013. Mr. Kelly was present and represented himself. Attorney Dina L. Atwood represented the Defendant.

### FACTS

Plaintiff had worked as a librarian at Green Mountain Union High School ("Defendant") for approximately seven years before the 2011-2012 school year. During that year, Plaintiff came into conflict with his immediate supervisor, Principal Tom Ferenc, about Plaintiff's role in a library revitalization project. The relationship between the two men deteriorated throughout the year. Plaintiff claimed he felt uncomfortable and threatened by Principal Ferenc, and Principal Ferenc reported that Plaintiff had begun to exhibit unusual, unprofessional behavior. The problems between Plaintiff and Principal Ferenc were eventually presented to Superintendent David Adams. Superintendent Adams investigated the dispute and determined that Principal Ferenc had not violated any law, policy or provision of the collective bargaining agreement.

On December 7, 2011, Plaintiff filed a grievance with Defendant's Board of Directors regarding an incident where Principal Ferenc allegedly intimidated Plaintiff and invaded his personal space. After a hearing, Defendant's Board of Directors denied Plaintiff's grievance. Plaintiff then filed a grievance against Superintendent Adams, alleging that he had failed to adequately respond to Plaintiff's concerns regarding Principal Ferenc. Defendant's Board of Directors also denied this grievance.

Throughout the 2011-2012 school year, Plaintiff continued to complain about Principal Ferenc and, at one point, even refused to have contact with him. Principal Ferenc interpreted Plaintiff's behavior as insubordinate. Superintendent Adams suspended Plaintiff for two days in February and for five days in March based on Plaintiff's insubordination and his unprofessional conduct.

Superintendent Adams recommended Plaintiff's termination on March 27, 2012. Defendant's Board of Directors voted to terminate Plaintiff on April 15, 2012, finding that Plaintiff had "engaged in a pattern and practice of insubordination by failing to carry out reasonable orders and directions… ." Arbitration Report, p. 18.

Arbitration hearings between Defendant and Plaintiff's union, the Windsor Southwest Educational Association Vermont NEA/NEA, regarding Plaintiff's termination occurred on December 6, 2012 and February 1, 2013. The parties thereafter submitted post-hearing briefs on March 15, 2013. On April 15, 2013, Attorney Sarah Kerr Garraty (the "Arbitrator") issued a 33 page report that denied Plaintiff's grievance and determined that Defendant "had just cause to discharge" Plaintiff. *Id.*, p. 33.

On May 8, 2013, Plaintiff filed a Motion to Vacate the arbitration award. He then requested a default judgment against Defendant on August 12, 2013 because Defendant had not opposed Plaintiff's motion.

A hearing on Plaintiff's Motion to Vacate and his Request for Default Judgment occurred on September 20, 2013 with both parties participating. At this hearing, Plaintiff submitted a document entitled "Evidence of Arbitrator Partiality," which supported his Motion to Vacate. This submission identified nine examples of the Arbitrator's partiality against him. Defendant submitted a Post-Hearing Memorandum and Objection to Plaintiff's Evidence on October 3, 2013, arguing that none of the evidence Plaintiff presented at the hearing established that the Arbitrator was biased. Plaintiff filed a Response to Defendant's Post-Hearing Memorandum on October 10, 2013.

ANALYSIS

"Vermont has a strong tradition of upholding arbitration awards whenever possible." *R.E. Bean Constr. Co. v. Middlebury Assocs.*, 139 Vt. 200, 204 (1980). To succeed on a motion to vacate an arbitration award, a party must demonstrate that the arbitration somehow fell outside "the boundaries of due process." *Matzen Constr., Inc. v. Leander Anderson Corp.*, 152 Vt. 174, 177 (1989). The statute controlling the vacation of arbitration awards identifies five circumstances where vacating the award is appropriate. *See* 12 V.S.A. § 5677(a).

Here, Plaintiff claims that the arbitration award should be vacated because "there was evident partiality by an arbitrator appointed as a neutral." 12 V.S.A. § 5677(a)(2). The fact that an arbitrator rules against a party does not prove that the arbitrator acted with evident partiality. *See Shahi v. Ascend Fin. Servs., Inc.*, 2006 VT 29, ¶¶ 15-16, 179

Vt. 434.  Similarly, "[v]ague assertions of corruption" are insufficient to prove that an arbitrator acted with evident partiality.  *Id.* ¶ 16.

To succeed on a motion to vacate, a party must make "particularized allegations of bias" supported by "evidence of fraud or corruption in [the] arbitration proceeding." *Id.*  A circumstance where the arbitrator had a close, "undisclosed relationship" with one of the parties to the arbitration is an example of the type of situation where evident partiality could be found.  *See R.E. Bean Constr. Co.*, 139 Vt. at 207.

Plaintiff's assertions of the Arbitrator's partiality are not vague.  He identifies nine examples of her alleged partiality.  However, merely alleging specific instances of partiality is insufficient to prove that an arbitrator was actually biased against a particular party.  The Court will therefore consider each of Plaintiff's allegations to determine if Plaintiff has made a sufficient offer of proof that the Arbitrator acted with evident partiality to support proceeding with an evidentiary hearing.[1]

First, Plaintiff claims that the Arbitrator mischaracterized an email Plaintiff sent to Principal Ferenc on August 27, 2011 and that she failed to note that the principal never took disciplinary action against Plaintiff as a result of his sending this or any other email.  This allegation does not establish evident partiality.  Plaintiff is essentially complaining that the Arbitrator did not accept his understanding of the August 27, 2011 email and the circumstances surrounding it.  He even admits that what he is really objecting to is the Arbitrator's "failure… to recognize the retaliatory nature" of certain disciplinary action and her "biased characterization" of an email sent by Principal Ferenc.  Evidence of Arbitrator Partiality, p. 1.  These complaints do not demonstrate evident partiality.  They demonstrate that the Arbitrator did not fully accept Plaintiff's version of certain events.  Therefore, Plaintiff's first example of the Arbitrator's partiality fails to warrant vacating the arbitration award.

Second, Plaintiff asserts that the Arbitrator accepted Principal Ferenc's version of events surrounding a November 14, 2011 confrontation with Plaintiff and that she mischaracterized the testimony of a witness to the confrontation.  Neither of these examples demonstrate partiality.  The Arbitrator was free to determine that the confrontation on November 14, 2011 happened more like Principal Ferenc described it than like Plaintiff described it.  Again, there is nothing biased about the Arbitrator interpreting events differently than Plaintiff.  Similarly, the mere fact that the Arbitrator described a witness's testimony slightly differently in two places does not demonstrate that she acted with evident partiality.  Indeed, the two statements identified by Plaintiff as inconsistent actually can be interpreted as consistent descriptions that focus on different moments of the same event.  Accordingly, Plaintiff's second example of the Arbitrator's partiality fails to warrant vacating the arbitration award.

---

[1] In its analysis, the Court will not "reweigh the evidence presented to the arbitrator or subject the merits of the controversy to judicial review."  *Matzen Constr., Inc.*, 152 Vt. at 177.  The Court will consider only Plaintiff's specific allegations of the Arbitrator's evident partiality.

Third, Plaintiff alleges that the Arbitrator failed to note Plaintiff's five separate attempts to find mutually acceptable working conditions with his superiors and that she ignored the fact that his doctor, not Plaintiff, "imposed conditions" on Plaintiff's employment. Each of these examples fails to prove the Arbitrator's partiality. Plaintiff admits that he testified as to his five attempts to reach an agreement with his superiors regarding his working conditions and that three of his emails on this subject were submitted to the Arbitrator. The Arbitrator's failure to note that Plaintiff made these attempts does not show evident partiality. They may or may not have affected her reasoning, but her failure to note them proves nothing. Similarly, the Arbitrator's statement that Plaintiff "was not in a position to unilaterally impose the conditions for fulfilling… his assigned job responsibilities" shows no bias. *Id.*, p. 2. That general statement is correct: Plaintiff could not unilaterally impose conditions on his employment. Plaintiff's assertion that his doctor, not he, imposed the relevant conditions does not show any partiality on the part of the Arbitrator. It merely shows that Plaintiff interprets his doctor as imposing the conditions rather than Plaintiff, whereas the Arbitrator interpreted Plaintiff imposing the conditions rather than one of Defendant's employees. This difference in perspective is insufficient to prove the Arbitrator acted with evident partiality. Therefore, Plaintiff's third example of the Arbitrator's partiality fails to warrant vacating the arbitration award.

Fourth, Plaintiff argues that the Arbitrator's use of the phrase "the eleventh hour" and her characterization of the circumstances surrounding Plaintiff's termination indicate partiality. The Arbitrator's interpretation of Plaintiff waiting until "the eleventh hour" to get certain clarifications from his doctor is not evidence of partiality. Here, Plaintiff reiterates his interpretation of several facts and then concludes that because the Arbitrator did not accept these facts and instead described him as waiting until "the eleventh hour," she acted with partiality. Her use of this phrase is consistent with her interpretation of the facts. It does not indicate she was biased against Plaintiff. Her description of the events leading up to Plaintiff's termination also does not show any evident partiality. This challenge focuses on how the Arbitrator phrased certain sentences in the arbitration award. These phrasings are no evidence of partiality. The Arbitrator was not required to accept exactly how Plaintiff interpreted his termination. Accordingly, Plaintiff's fourth example of the Arbitrator's partiality fails to warrant vacating the arbitration award.

Fifth, Plaintiff asserts that the Arbitrator demonstrated her partiality by failing to accept that Superintendent Adams was unclear about the status of his rules regarding Plaintiff's interactions with Principal Ferenc. He also complains that the Arbitrator was biased against him because she mistakenly wrote that Plaintiff had stated certain conditions regarding his attendance at meetings with Principal Ferenc before a particular meeting on January 13, 2012. The Arbitrator's failure to accept Plaintiff's view of how clear Superintendent Adams was regarding certain rules does not show any partiality. It merely shows that she disagreed with Plaintiff's perspective. As for Plaintiff's claim that the Arbitrator rearranged the sequence of certain events, both the meeting and the doctor's appointment at issue occurred on the same day. Even if the Arbitrator mistakenly believed that the doctor's appointment occurred before the meeting, such a mistake is not evidence of partiality. It is merely evidence that the Arbitrator confused

4

the timing of two events from the same day. As a mistake is not evidence of any bias, Plaintiff's fifth example of the Arbitrator's partiality fails to warrant vacating the arbitration award.

Sixth, Plaintiff asserts that the Arbitrator also demonstrated her bias by incorrectly stating that Plaintiff's initial two-day suspension was partially a result of his missing scheduled meetings. He also disputes whether the meetings at issue were "scheduled." As an initial matter, the fact that meetings were scheduled closely to when they were being held does not mean that they were unscheduled. Further, the Arbitrator's use of the word scheduled in no way suggests partiality in favor of Defendant. In an attempt to prove the Arbitrator's bias in stating that Plaintiff's two-day suspension partially occurred because of Plaintiff's "refusal to participate in scheduled professional meetings," Plaintiff suggests that the Arbitrator deliberately misstated why Plaintiff received that suspension. Although Plaintiff is correct that Superintendent Adams letter did not specifically state that the two-day suspension was being ordered in part because of Plaintiff's failure to attend meetings, his suggestion that the Arbitrator knowingly misrepresented the reasons for his two-day suspension is entirely speculative. Superintendent Adams's letter regarding Plaintiff's two-day suspension notes that the school had general and specific concerns about Plaintiff's performance. The Arbitrator may well have reasoned that one of the general concerns about Plaintiff's performance was his failure to attend professional meetings. The fact that she disagrees with Plaintiff's understanding of the letter does not mean she is biased against him. Accordingly, Plaintiff's sixth example of the Arbitrator's partiality fails to warrant vacating the arbitration award.

Seventh, Plaintiff argues that the Arbitrator demonstrated her bias by incorrectly stating that Plaintiff failed to attend a particular meeting on March 13, 2012 at 3 PM. Plaintiff argues that he attended this meeting, but the Arbitrator's report concludes that he did not. This conclusion about Plaintiff's attendance at one particular meeting does not prove partiality on the part of the Arbitrator. Even if Plaintiff is correct that he attended this meeting, Plaintiff has entirely failed to show why a mistaken conclusion by the Arbitrator constitutes evident partiality. He simply jumps from the supposed mistake by the Arbitrator to the conclusion that she acted with "extreme partiality." *Id.*, p. 5. Such a jump requires some explanation of why the Arbitrator would purposefully make a mistake to find against Plaintiff. Because Plaintiff offers no such explanation, Plaintiff's seventh example of the Arbitrator's partiality fails to warrant vacating the arbitration award.

Eighth, Plaintiff asserts that the Arbitrator falsely determined that he failed to attend certain meetings for which he was provided with advance notice. He also claims that the Arbitrator incorrectly assumed that one of the conditions suggested by his doctor was that he not be alone in a room with Ferenc. This second claim is extremely weak. Plaintiff's doctor recommended that for Plaintiff it was "Best to avoid contact with [the] individual [Principal Ferenc], as possible." It was entirely reasonable for the Arbitrator to interpret such a provision as a request not to be alone with Principal Ferenc, and Plaintiff's assertion to the contrary does not demonstrate any partiality by the Arbitrator.

5

Similarly, the Arbitrator's conclusion that Plaintiff did not attend some meetings for which he had advanced notice shows no partiality. Plaintiff admits that Defendant argued during the Arbitration that Plaintiff did miss certain meetings. The Arbitrator was entirely reasonable in accepting Defendant's evidence and argument on this issue rather than Plaintiff's. Therefore, Plaintiff's eighth example of the Arbitrator's partiality fails to warrant vacating the arbitration award.

Ninth, Plaintiff alleges that the Arbitrator's conclusion that Plaintiff was terminated before Plaintiff's doctor's letter was produced to Defendant indicates the Arbitrator's partiality. Plaintiff's allegation does not demonstrate any partiality by the Arbitrator. Superintendent Adams's letter recommending Plaintiff's termination is dated one day after Plaintiff produced his doctor's letter. The Arbitrator may have believed that Superintendent Adams had already finalized his decision to recommend Plaintiff's termination before their meeting. She may also have made a mistake regarding the chronology of when Plaintiff produced his doctor's letter and when Superintendent Adams dated his letter recommending Plaintiff's termination. Even if the Arbitrator made such a mistake, it does not prove any bias against Plaintiff. Accordingly, Plaintiff's ninth example of the Arbitrator's partiality fails to warrant vacating the arbitration award.

Plaintiff's examples of the Arbitrator's partiality are really his complaints that the Arbitrator did not accept his version of events and his accusations that the Arbitrator made minor mistakes. The Arbitrator was not required to interpret the facts as Plaintiff did. Also, her making occasional mistakes in a detailed report of over thirty pages is no evidence of any partiality. The Arbitrator's work shows no bias against Plaintiff or in favor of Defendant.[2] Accordingly, as Plaintiff's examples fail to establish that the Arbitrator acted with evident partiality, his Motion to Vacate Arbitration Award is denied.[3]

Finally, Plaintiff's Request for Default Judgment is also denied. V.R.C.P. 55(a) provides that "[w]hen a party against whom **a judgment for affirmative relief is sought** has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." V.R.C.P. 55(a) (emphasis added). Here, Plaintiff has not sought a judgment against Defendant. He merely moved to vacate an arbitration award. Defendant's failure to oppose Plaintiff's motion does not make a default judgment appropriate. Accordingly, Plaintiff's Request for Default Judgment must be denied.

---

[2] Notably, though Plaintiff thoroughly describes his examples of the Arbitrator's partiality, he never identifies any reason why Plaintiff would be biased against him or partial to Defendant.

[3] In addition to each of Plaintiff's examples failing to prove any evident partiality on the part of the Arbitrator individually, the nine examples considered together also do not establish evident partiality by the Arbitrator. Plaintiff's suggestion that the Arbitrator's overall interpretation of the facts indicates that she acted with evident partiality also fails because it merely reiterates Plaintiff's overarching argument that the Arbitrator was biased against him because she interpreted certain facts differently. As previously explained, such an argument does not support vacating an arbitration award.

6

## ORDER

Plaintiff's Motion to Vacate is hereby *denied*. Plaintiff's Request for Default Judgment is also hereby *denied*.

Dated at Woodstock, Vermont, this 13th day of November, 2013.

_____
Honorable Mary Miles Teachout
Presiding Judge
Windsor Superior Court